Argued and submitted November 4, 1992, decision of Court of Appeals modified; judgment of circuit court reversed and case remanded to circuit court for new trial March 25, reconsideration denied May 25, 1993

STATE OF OREGON,
*Petitioner on Review,*

*v.*

CHRISTOPHER BLAINE BOOTS,
*Respondent on Review.*

(CC 10-86-07965; CA A67325; SC S39368)

848 P2d 76

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for respondent on review. With her on the response was Sally L. Avera, Public Defender, Salem.

PETERSON, J.

Unis, J., dissented and filed an opinion in which Carson, C. J., and Fadeley, J., joined.

## PETERSON, J.

We consider this murder case for the second time on review. The first question presented is whether, in the absence of an express order from an appellate court, a trial court may, on remand, order a limited retrial on the existence of an element of the offense of aggravated murder. If a limited retrial was permissible, the second question presented is whether the trial court erred by instructing the jury that the state, in the first trial, had proved beyond a reasonable doubt that defendant committed First Degree Robbery. We hold that the trial court order of a limited retrial was proper, but that the court erred in its instruction to the jury.

Defendant was charged in a one-count indictment with alternative theories of aggravated murder, ORS 163.095 (1985), based on the same criminal episode. The indictment alleged that defendant killed the victim in the course of committing the crime of robbery in the first degree, ORS 163.095(2)(d), and in an effort to conceal the identity of the perpetrators of that crime, ORS 163.095(2)(e).[1] The trial court instructed the jury that it need not agree unanimously on either of those theories, as long as all 12 jurors agreed that defendant committed aggravated murder. The jury returned

---

[1] ORS 163.095 (1985) in part provided:

" '[A]ggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(2)(d) Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b).

"(e) The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime."

ORS 163.115(1)(b) (1985) in part provided:

"Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:

"* * * * *

"(b) It is committed by a person * * * who commits or attempts to commit any of the following crimes and in the course of and in furtherance of the crime the person is committing or attempting to commit, * * * causes the death of a person other than one of the participants:

"* * * * *

"(G) Robbery in the first degree * * *."

a general verdict finding defendant guilty of aggravated murder.

The Court of Appeals affirmed defendant's conviction. *State v. Boots*, 94 Or App 713, 767 P2d 450 (1989). This court reversed, holding that the instruction that the jury need not unanimously agree on either theory of aggravated murder was reversible error. *State v. Boots*, 308 Or 371, 780 P2d 725 (1989). This court also concluded that the jury necessarily found by its general verdict on the aggravated murder count that defendant was guilty of murder under ORS 163.115, and that the instructional error did not affect that implicit finding. 308 Or at 381. Consequently, this court reversed the aggravated murder conviction and remanded with this instruction:

> "On remand, the state may choose whether to reduce the defendant's conviction and sentence to murder under ORS 163.115 or to retry the charge of aggravated murder." *Id.* at 381.[2]

On remand, the state elected to retry the aggravated murder charge, pursuing only the murder-to-conceal theory under ORS 163.095(2)(e). The state moved to limit the new trial "only to the determination of whether or not the defendant is guilty of the enhanced crime of Aggravated Murder." The trial court granted the motion. At the conclusion of the evidence, the trial court instructed the jury that defendant had been convicted of murdering and robbing the victim and that the jury's sole function was to determine whether the murder was committed in an effort to conceal the identity of the perpetrators of the robbery. The jury returned a verdict of guilty to the crime of aggravated murder. Defendant was sentenced to life imprisonment with a 20-year minimum.[3]

Defendant again appealed, raising various claims of error. Without reaching defendant's other assignments of

---

[2] *See State v. Brown*, 310 Or 347, 800 P2d 259 (1990) (where there was sufficient evidence to convict the defendant for murder under ORS 163.115, but there was reversible error at trial as to the charge of aggravated murder, ORS 163.095, appellate court remanded the case for the state to choose whether to retry the charge of aggravated murder or to reduce the conviction to one for intentional murder and to sentence the defendant for the latter offense).

[3] This is a longer minimum sentence than could have been imposed for a simple murder conviction under the law in effect at the time of the offense. *See* ORS 163.105, 163.115 (1985).

error, the Court of Appeals reversed and remanded on the sole ground that, in limiting the jury's consideration to the existence of the aggravating factor, the trial court violated this court's remand order. *State v. Boots*, 112 Or App 25, 29, 826 P2d 1049 (1992).

The state petitioned for review, asserting:

"The trial court in this case correctly construed this court's remand order to permit a limited retrial on just the aggravating factor. Nothing in this court's opinion in *Boots I* expressly required a complete retrial of all elements [of] the aggravated-murder charge, and the remand order itself did not preclude the trial court from ordering that only the aggravating factor needed to be retried. Thus, [the] approach taken by the trial court on remand fully comported with this court's order."

By contrast, defendant argues that the "clear intention of the Supreme Court" was to require a complete retrial.

This court has, on occasion, remanded criminal cases expressly for consideration of specified issues. For example, in *State v. Wagner*, 309 Or 5, 786 P2d 93, *cert den* 498 US 879 (1990), and *State v. Moen*, 309 Or 45, 786 P2d 111 (1990), this court affirmed the defendants' convictions for aggravated murder but remanded the cases for the express purpose of conducting further proceedings on the penalty to be imposed. In *State v. Green*, 271 Or 153, 531 P2d 245 (1975), this court remanded the case to the trial court for the express purpose of determining whether the defendant killed the victim under extreme mental or emotional disturbance; whether the defendant killed the victim in the first place was not relitigated.[4]

---

[4] In *State v. Green*, this court concluded:

"We agree, however, that defendant's guilt of either murder or manslaughter was established by overwhelming evidence. It was also conceded, in effect, that defendant was guilty of either murder or manslaughter. Thus, although defendant did not testify, the testimony offered on his behalf, including that of his expert witnesses, based upon what they had been told by the defendant, was to the effect that he had killed the two girls, but that in doing so he was acting under 'extreme mental or emotional disturbance.' This was also the argument to the jury on defendant's behalf, in which defendant's counsel stated that 'the only issue in this case is: Is it murder or is it manslaughter?'

"For the reasons previously stated, we must remand this case for a new trial. The new trial, however, will be limited to the question whether at the time of killing the two girls, defendant acted under an 'extreme mental or emotional disturbance,' so as to be guilty of manslaughter, rather than of murder." 271 Or at 175-76 (footnotes omitted).

*Wagner, Moen,* and *Green* demonstrate the power of this court expressly to limit issues to be considered on remand in a criminal case in which a lesser-included offense was proved without error at trial.

That is not what was done by this court in this case. This court's remand order neither expressly *required* the trial court to retry defendant on every element of an aggravated murder charge, nor expressly *limited* the trial court to a trial on the existence of an aggravating factor. The order nonetheless can be read to *permit* a limited retrial. Therefore, we consider the question whether, in the absence of an express order from this court limiting the retrial to the existence of the aggravating factor, the trial court in this case erred in ordering a retrial limited to whether defendant murdered the victim in order to conceal defendant's identity as the perpetrator of a crime.

██ There is no question that defendant, in his original trial, was tried and found guilty of the lesser-included offense of murder, ORS 163.115. *State v. Boots, supra,* 308 Or at 381. This court's decisions in *State v. Wagner, supra,* and *State v. Green, supra,* are affirmations of the principle that an error-free conviction of a criminal offense need not be retried even though an appellate court has ordered a retrial of a greater offense of which the lesser offense is a lesser-included offense. *See also State v. Ferrell,* 315 Or 213, 224, 843 P2d 939 (1992) (where the defendants' convictions for underlying offenses — manufacture, possession, or delivery of a controlled substance — were free from error, the Court of Appeals erred in reversing entire convictions; this court remanded the cases to the trial courts for entry of judgments of conviction on those underlying offenses and for resentencing). If all elements of a lesser-included offense have been fully and fairly alleged and proved, an appellate court may order a retrial limited to the element establishing the greater offense. Under the directions given by this court to the trial court, the trial court in this case could do the same, that is, order a retrial limited to those issues that caused the appellate court to reverse defendant's conviction on the greater offense.

██ ██ Defendant argues that the limited retrial violated his state and federal constitutional rights not to be put in

jeopardy twice for the same offense.[5] Defendant is incorrect. It is well settled that, where a defendant appeals a conviction and error is found by the appellate court, retrial on the original charge for which the defendant was convicted does not violate the state or federal prohibition against double jeopardy. *See, e.g., Lockhart v. Nelson*, 488 US 33, 109 S Ct 285, 102 L Ed 2d 265 (1988) (the general prohibition against successive prosecutions found in the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States does not prevent the government from retrying a defendant whose first conviction is set aside, on the defendant's appeal, due to trial error); *State v. Verdine*, 290 Or 553, 560-61, 624 P2d 580 (1981) (for the same reasons that the Fifth Amendment does not bar a second trial, neither does Article I, section 12, of the Oregon Constitution). *See also* ORS 131.525(1)(a) (previous prosecution is not a bar to a subsequent prosecution where the defendant has appealed a judgment of conviction resulting from the former).

Here, defendant was convicted of aggravated murder, ORS 163.095. His conviction for that offense was set aside due to trial error, although his underlying conviction for murder, ORS 163.115, was affirmed. *State v. Boots, supra*, 308 Or at 381. Defendant was subsequently retried for aggravated murder. Defendant's state and federal constitutional rights not to be placed in jeopardy twice for the same offense were not violated.

■ ■ Defendant next argues that the limited retrial ordered by the trial court violated his right to trial by jury.[6] This argument also is unpersuasive. Although it is true that

---

[5] Article I, section 12, of the Oregon Constitution, provides in part that "[n]o person shall be put in jeopardy twice for the same offence [*sic*]." The Fifth Amendment to the Constitution of the United States provides in part that "[n]o person shall * * * be subject for the same offence [*sic*] to be twice put in jeopardy of life or limb."

[6] ORS 136.001(1) provides:

"The defendant in all criminal prosecutions shall have the right to public trial by an impartial jury."

Article I, section 11, of the Oregon Constitution, provides in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury[.]"

The Sixth Amendment to the Constitution of the United States provides in part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]"

defendant is entitled to have the state prove to a jury all elements of the offenses of which he is accused, he has received that protection here. This court held in *State v. Boots, supra*, 308 Or at 381, that the jury in defendant's first trial properly had found him guilty of the crime of murder, ORS 163.115. In his second trial, a jury found him guilty of aggravated murder, ORS 163.095. Defendant's right to trial by jury on all elements of the offenses of which he has been convicted has not been violated.

■ Neither has defendant's right to be presumed innocent of the crime with which he is charged been violated.[7] We repeat, once again, that defendant was convicted, without error, in his first trial of the crime of murder, ORS 163.115. *State v. Boots, supra*, 308 Or at 381. On that conviction, defendant lost the benefit of the presumption of his innocence as to that crime. *See Priest v. Pearce*, 314 Or 411, 416, 840 P2d 62 (1992) (stating principle). During his second aggravated murder trial, he was entitled to, and received, the presumption of innocence as to the crime of aggravated murder. Defendant's right to a presumption of innocence was not violated.

For the above-stated reasons, we hold that the trial court did not err in ordering a retrial limited to whether defendant murdered the victim in order to conceal defendant's identity as the perpetrator of a crime.

■ Defendant next argues that, in his second trial, the trial court erred in instructing the jury that

"the state proved beyond a reasonable doubt * * * that the Defendant * * * committed the crime of Robbery in the First Degree of [the victim] during the same incident in which [the victim] was shot and killed * * *.

"The jury selected to try this case is to take these as established facts and they are not to be questioned or re-examined. They are considered true for all purposes of this case."

In defendant's first trial, the court instructed the jury that the state must prove beyond a reasonable doubt

---

[7] ORS 136.415 provides in part:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved."

"That the Defendant intentionally caused the death of [the victim], another human being, in the course of committing the crime of Robbery in the First Degree, or in an effort to conceal the identity of the perpetrators of the crime."

Because all 12 jurors agreed with at least one of these theories, the jury necessarily found that a robbery had been committed. The question becomes, did the jury necessarily find that *defendant* committed the robbery?

The state argues that, at the first trial, defendant's only defense to the robbery-murder was an alibi. He did not question that the victim was killed by the robber or robbers in the course of a robbery. Therefore, the state contends, the evidence from the first trial was capable of no other interpretation but that whoever killed the victim did so in the course of robbing him or to conceal the identity of the perpetrator of the robbery. The state argues that, by its verdict, the jury rejected defendant's alibi defense and thus implicitly must have found that defendant committed robbery.

The verdict returned in the first trial did not disclose whether defendant was found guilty of causing the death of another "in the course of committing the crime of Robbery" or "to conceal the identity of the perpetrators of the crime." We have again examined the record from the first trial. Under all the evidence, much of which was circumstantial, it is possible that the jury could have found that defendant killed the victim to conceal the identity of a robber other than himself. Based on the second theory of aggravated murder (the killing was "an effort to conceal the identity of the perpetrators of the crime"), the jury could have believed part of defendant's testimony and nonetheless found rationally that defendant committed murder to conceal the identity of another person who had committed the robbery. Under that scenario, defendant would have been guilty of aggravated murder without having committed a robbery. Therefore, the verdict in the first trial did not necessarily establish that defendant committed robbery and the trial court erred by instructing the jury that defendant had committed first degree robbery.

This error was not harmless. In the retrial, the state chose to prove aggravated murder under the sole theory that defendant killed the victim in order to conceal the identity of

the perpetrator of the robbery. The jury was erroneously told that *defendant* committed the robbery. The jury might have been more likely to believe that defendant committed the murder to conceal *his own* identity than to conceal another's identity. Therefore, the jury instruction that defendant had committed First Degree Robbery prejudiced him and is reversible error. Accordingly, the defendant's conviction must again be reversed.

The decision of the Court of Appeals is modified. The judgment of the circuit court is reversed. This case is remanded to the circuit court for a new trial. On remand the state may choose whether to reduce the defendant's conviction and sentence to murder under ORS 163.115 or to retry the charge of aggravated murder. If the state chooses to retry the charge of aggravated murder, the trial may be limited to the determination of whether defendant is guilty of the enhanced crime of aggravated murder, and the jury may be instructed that defendant's responsibility for the intentional murder of the victim has been established.

The decision of the Court of Appeals is modified. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for a new trial.

**UNIS, J.,** dissenting.

The majority holds that a limited retrial was not prohibited by *State v. Boots*, 308 Or 371, 780 P2d 725 (1989) (*Boots I*), and did not violate defendant's statutory or state or federal constitutional rights to a fair and impartial trial by jury, defendant's statutory or state or federal constitutional protections against double jeopardy, or other related procedural guarantees to which defendant was entitled. Moreover, in remanding this case to the circuit court for a retrial because of prejudicial instructional error, the majority holds that a limited retrial is permissible. Those holdings reflect a startling lack of awareness or fundamental misunderstanding of the nature of the valued protections accorded an accused by those statutory and constitutional provisions.

Because I believe that a limited retrial was impermissible under this court's analysis and remand instructions in *Boots I*, and also is impermissible because it violates defendant's statutory and state and federal constitutional rights to

a fair and impartial trial by jury, defendant's statutory and state and federal constitutional protections against double jeopardy, and other related procedural guarantees to which defendant was entitled, I would affirm the decision of the Court of Appeals, but for reasons in addition to those expressed by that court. I would reverse defendant's conviction for aggravated murder and remand for further proceedings not inconsistent with *Boots I* and this opinion.

In order to understand the precise nature of the legal question before this court, it is important to review in some detail the posture in which this case comes to us.

Defendant was charged in a single-count indictment with two theories of aggravated murder, ORS 163.095, a capital offense, ORS 163.105. One theory was that defendant killed the victim in the course of and in furtherance of committing a robbery, ORS 163.095(2)(d). The second theory was that defendant killed the victim to conceal the identity of defendant or his accomplice as the perpetrator of a robbery, ORS 163.095(2)(e). Specifically, the indictment alleged that, on or about June 7, 1983, in Lane County, Oregon, defendant, together with another named person, "intentionally and personally cause[d] the death of [victim] by shooting him in the head with a firearm," and that "the said killing [was] committed in the course of and in furtherance of committing Robbery in the First Degree [or] in an effort to conceal the identity of the perpetrators of [the robbery]."[1]

Following trial by jury, defendant was found guilty of aggravated murder and sentenced to life imprisonment with a 20-year minimum, the mandatory sentence under *former* ORS 163.105. Defendant appealed. The Court of Appeals

---

[1] "The indictment charged that defendant both killed the victim in the course of the robbery *and* did so in order to conceal the perpetrator's identity. The governing statute prescribes that when a crime may be committed by the use of different means, the indictment may charge the means in the alternative. ORS 132.560. In view of the statute, a reader reasonably may infer that when an indictment uses 'and' instead of 'or,' it charges that both means were used and that both need to be proved. The continued use of 'and' where 'or' is called for testifies to the power of habit, custom, and faith in existing forms over the force of mere statutes. *See State v. White*, 48 Or 416, 87 P 137 (1906); *State v. Carr*, 6 Or 133 (1876)." *State v. Boots*, 308 Or 371, 374 n 3, 780 P2d 725 (1989) (emphasis in original).

affirmed defendant's conviction. *State v. Boots*, 94 Or App 713, 767 P2d 450 (1989). On review, this court held that, because the state had proceeded on alternative aggravating factors on which the jury could find defendant guilty of aggravated murder, the trial court erred in instructing the jury that, in order to find defendant guilty of aggravated murder, it was not required to agree unanimously on either of the two aggravating factors, as long as any combination of 12 jurors agreed that defendant had committed the murder during the course of the robbery, or that defendant had committed the murder to conceal the identity of the perpetrators of the robbery, or both. *Boots I, supra*, 308 Or at 381. This court emphasized that, to convict a defendant of aggravated murder, the jury must agree unanimously on the particular aggravating factor that makes the homicide aggravated murder. *Id.* at 377-79. Because the jury returned a general verdict, the record in *Boots I* did not show whether all 12 jurors had agreed on one or both of the aggravating factors alleged in the indictment.

It was not disputed in *Boots I*, however, that, in rendering its verdict of guilty of aggravated murder, the jury implicitly agreed unanimously that defendant had committed the murder. *Id.* at 373. In *Boots I*, there was sufficient evidence to sustain a conviction for "simple" murder, *id.* at 375, and the instructional error did not affect that implicit finding. Consequently, this court reversed defendant's conviction for aggravated murder and stated:

> "On remand, the state may choose whether to reduce the defendant's conviction and sentence to murder under ORS 163.115 or to retry the charge of aggravated murder." *Id.* at 381.

This court then ordered:

> "The decision of the Court of Appeals is reversed. The circuit court's judgment of conviction of aggravated murder is reversed and the case is remanded to the circuit court for further proceedings." *Id.*

On remand, the state nominally elected to retry defendant on the charge of aggravated murder. However, the state moved to limit the second trial (the retrial) to a jury determination of "whether or not defendant is guilty of the

enhanced crime of Aggravated Murder." The trial court's order stated:

> "THIS CAME before the Court on motion of the State to limit the retrial of this case on remand from the Supreme Court to a determination only of whether the defendant is guilty of the crime of Aggravated Murder, as his guilt of at least the crime of Murder was necessarily established by the original verdict. Both parties submitted written arguments and authorities for and against the motion, and agreed that it could be decided by the Court on the basis of the written record.
>
> "* * * * *
>
> "IT IS HEREBY ORDERED that the State's motion is granted. Upon retrial, the evidence will be limited to the issues of whether the defendant killed the victim '* * * in furtherance of committing Robbery in the First Degree and in an effort to conceal the identities of the perpetrators of said crime.' "

Before the introduction of any evidence, the trial court instructed the jury:

> "This case comes here for trial in a rather unusual legal posture. *In a previous trial the [d]efendant * * * was found guilty by a jury of the crime of Murder. In this trial the State proved beyond a reasonable doubt the following: One, that the [d]efendant intentionally caused the death of [victim]; two, that the [d]efendant and [an accomplice] committed the crime of Robbery in the First Degree of [victim] during the same incident in which [victim] was shot and killed and that this event occurred June 7, 1983 at a 7-Eleven store located at 7095 Main Street in Springfield, Lane County, Oregon.*
>
> "*The jury selected to try this case is to take these as established facts and they are not to be questioned or re-examined. They are considered true for all purposes of this case.*
>
> "Because of an error made in an instruction given the jury during the first trial the Oregon Supreme Court has sent this case back for retrial of a very limited issue. *The issue you will be deciding is whether or not the murder of [victim] during the course of the robbery of [victim] was done to conceal the identity of the [d]efendant or the accomplice * * *.*" (Emphasis added.)

At the close of the evidence, the trial court further instructed the jury:

"To establish the crime of Aggravated Murder the State must prove beyond a reasonable doubt each of the following elements. First, that the act was committed in Lane County, Oregon. Second, that the act was committed on or about June 7, 1983. Three, that the [d]efendant intentionally caused the death of another human being in an effort to conceal the identity of the perpetrator of a crime.

*"As I previously instructed you, certain of these elements or facts have previously been established and you are not to question them. The limited issue you are to decide is whether or not the murder of [victim] by the [d]efendant during the course of the robbery of [victim] was done to conceal the identity of the [d]efendant or an accomplice. If you find that the State has proven this element beyond a reasonable doubt, then the [d]efendant is guilty of Aggravated Murder.*

"All twelve of you must vote in favor of such a verdict.

*"If you find that the State has not proven this element beyond a reasonable doubt, then the [d]efendant is not guilty of Aggravated Murder but, as previously indicated, is guilty of Murder."* (Emphasis added.)

The trial court submitted the following verdict form to the jury:

"We, the jury, duly empaneled to try the above-entitled action, find our verdict as follows:

"_____ Guilty of Aggravated Murder. The State has proven beyond a reasonable doubt that the murder was done to conceal the identity of the Defendant or an accomplice in the robbery of [victim]. All twelve (12) jurors must agree upon this verdict.

"_____ Not guilty of Aggravated Murder. The State has not proven beyond a reasonable doubt that the murder was done to conceal the identity of the Defendant or an accomplice in the robbery of [victim]. At least ten (10) jurors must agree upon this verdict."

Thus, the trial court submitted the case to the jury only on the issue of whether defendant committed the murder to conceal the identity of the perpetrator of the crime.

At all appropriate times, defendant argued that the limited retrial, the trial court's instructions, the verdict form submitted to the jury, and the procedure employed by the trial court in the retrial violated this court's remand order in *Boots I*, his statutory and state and federal constitutional rights to a fair and impartial trial by jury, his statutory and state and federal constitutional protections against double jeopardy, and other related procedural guarantees, which are discussed *infra*.

The jury returned a verdict of guilty of aggravated murder. Defendant was sentenced to life imprisonment with a 20-year mandatory minimum. Defendant again appealed, asserting the objections that he had made in the trial court. He also raised other claims of error. The Court of Appeals reversed and remanded for "proceedings not inconsistent with [*Boots I*] * * * and this decision," *State v. Boots*, 112 Or App 25, 29, 826 P2d 1049 (1992), holding that "[t]he option the state was given was to 'retry the charge of aggravated murder,' not to retry only part of it," *id.* at 28. Because of its disposition, the Court of Appeals found it unnecessary to determine "whether a proceeding in which less than all of the elements of aggravated murder could be tried would offend any constitutional protections." *Id.* at 29.

I.

THE LIMITED RETRIAL VIOLATED THIS
COURT'S REMAND ORDER IN *BOOTS I*

The foundation on which the majority rests its entire analysis to support its conclusion that the limited retrial did not violate this court's remand order in *Boots I* is seriously flawed. The majority reasons:

> "This court's remand order [in *Boots I*] neither expressly *required* the trial court to retry defendant on every element of an aggravated murder charge, nor expressly *limited* the trial court to a trial on the existence of an aggravating factor. The order nonetheless can be read to *permit* a limited retrial. Therefore, we consider the question whether, in the absence of an express order from this court limiting the retrial to the existence of the aggravating factor, the trial court in this case erred in ordering a retrial limited to whether defendant

murdered the victim in order to conceal defendant's identity as the perpetrator of a crime.

"* * * [I]n his original trial, [defendant] was tried and found guilty of the lesser-included offense of murder, ORS 163.115. *State v. Boots, supra*, 308 Or at 381." 315 Or at 577 (emphasis in original).

Relying on this court's decisions in *State v. Wagner*, 309 Or 5, 786 P2d 93, *cert denied Oregon v. Wagner*, 498 US 879, 111 S Ct 212, 112 L Ed 2d 171 (1990), and *State v. Green*, 271 Or 153, 531 P2d 245 (1975), the majority states that "an error-free conviction of a criminal offense need not be retried even though an appellate court has ordered a retrial of a greater offense of which the lesser offense is a lesser-included offense." 315 Or at 577. "If all elements of a lesser-included offense have been fully and fairly alleged and proved," the majority holds, "an appellate court may order a retrial limited to the element establishing the greater offense." *Id*. The majority concludes that, "[u]nder the directions given by this court to the trial court [in *Boots I*], the trial court in this case could do the same, that is, order a retrial limited to those issues that caused the appellate court to reverse defendant's conviction on the greater offense." *Id*.

*Boots I* gave the state the option to have a judgment of conviction entered against defendant "or to *retry* the charge of aggravated murder." *Boots I, supra*, 308 Or at 381 (emphasis added). Thus, this case is about what this court intended by the phrase "or retry the charge of aggravated murder" in the *Boots I* remand order. Determining what this court intended by its *Boots I* remand order is a responsibility of this court, not the trial court. Yet, according to the majority, because the remand order "can be read to *permit* a limited retrial," the trial court did not err in ordering the limited retrial. Instead of expressing what this court intended by the phrase "or to retry the charge of aggravated murder," the majority implicitly allows the trial court to determine what this court intended. This suggests that, if the directions in a remand order of this court are subject to more than one permissible construction, a petition for reconsideration is not necessary, and the trial court will not err if its action is consistent with any of the permissible interpretations. That implication is unsatisfactory and demonstrates why this

court, not the trial court, must determine what the *Boots I* remand order means.

In construing a court order, the task is to determine the intent of the court that issued the order. The best evidence of judicial intent is the text of the order itself. Stated differently, there is no more persuasive evidence of the purpose of a court order than the words used by the court to express its wishes. The inquiry into judicial intent, therefore, begins with an examination of the words of the court order itself. Words of common usage in a court order are to be given their plain, natural, and ordinary meaning.

Applying those principles for determining this court's intent in *Boots I*, the word "retry" has a plain, natural, and ordinary meaning. The word "try" means "[t]o examine and investigate a controversy, by the legal method called 'trial,' for the purpose of determining the issues it involves," Black's Law Dictionary 1516 (6th ed 1990), or "to examine and determine judicially, as a cause; determine judicially the guilt or innocence of (a person)," Random House Dictionary of the English Language 2031 (unabridged 2d ed 1987) (definition 5 for field of law). "Re" means " 'again' * * * to indicate repetition." *Id.* at 1605. "Retry" means "to try again." Webster's Third New International Dictionary 1941 (unabridged 1976). "Retry," as used in the *Boots I* remand order, is a verb that, when transmuted into the noun, becomes "retrial," which means "a new trial of an action which has already been once tried," Black's Law Dictionary, *supra* at 1317, or "a second trial, * * *: a second judicial trial (as of an accused person)," Webster's, *supra*, at 1940.

This court intended, as it always must, that the remand order in *Boots I* be given its plain, natural, and ordinary meaning — its sensible meaning. That is the meaning given by the Court of Appeals, that "[t]he option that the state was given [by the *Boots I* remand order] was 'to retry the charge of aggravated murder,' not to retry only part of it."[2]

---

[2] Giving the state the option "to reduce the defendant's conviction and sentence to murder" is consistent with this court's authority under the final clauses of Article VII, section 3, of the Oregon Constitution, which provides:

"[I]f, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should

112 Or App at 28. And, as stated by the Court of Appeals, "if [the Supreme Court in *Boots I*] had intended to allow the state to retry the aggravating elements alone, we think that it would have expressly limited its remand to those elements; it would not have engaged in a pointless charade of giving the *state* a *choice* to prove some but not all of the elements of the crime, when a limited remand would have had that effect without the need for a choice by the state." *Id.* (emphasis in original). This court unambiguously allowed the state to choose to retry a *charge*, not to reconsider one issue. The trial court was wrong to conclude that this court had "sent this case back for retrial of a very limited issue,"[3] and the majority is wrong to approve the trial court's limited retrial.

The majority's reliance on *State v. Wagner, supra,* and *State v. Green, supra,* is misplaced. *State v. Wagner* and *State v. Green* involved different circumstances and different remand orders; they are irrelevant in determining what the *Boots I* remand order means. In *State v. Wagner, supra,* this court remanded only "for resentencing," that is, for a determination of whether the defendant would be sentenced to death, but did nothing with respect to the *conviction* (*i.e.,* the guilt phase of the trial), affirming *in toto* the defendant's conviction for aggravated murder. *State v. Wagner, supra,* 309 Or at 20. In *State v. Green, supra,* 271 Or at 175, the defendant *conceded* "that [the] defendant was guilty of either murder or manslaughter." The only issue in *State v. Green,* according to the defendant's lawyer, was whether the crime was murder or manslaughter. *Id.* Because the defendant in *State v. Green conceded* the commission of the two homicides, this court expressly limited the issues to be retried on the

---

have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court. Provided, that nothing in this section shall be construed to authorize the supreme court to find the defendant in a criminal case guilty of an offense for which a greater penalty is provided than that of which the accused was convicted in the lower court."

"The clear implication of this [final clause] language is that the Supreme Court is authorized to find the accused guilty of a lesser offense than that of which he was convicted by the verdict of a jury." Lusk, *Forty-Five Years of Article VII, Section 3, Constitution of Oregon,* 35 Or L Rev 1, 20 (1955).

[3] By so stating, the trial court was implicitly recognizing that the proceeding was *not* a retrial of a *charge*.

remand of the defendant's conviction "to the question whether at the time of killing the two girls, defendant acted under an 'extreme mental or emotional disturbance,' so as to be guilty of manslaughter, rather than of murder." 271 Or at 176.

In the present case, defendant neither expressly nor impliedly admitted that he murdered the victim or committed the robbery. Neither did he or his lawyer, by conduct or statements, allow it to be assumed that those elements of the crime of aggravated murder were not disputed. Defendant's plea of not guilty[4] cast on the state the burden of proving beyond a reasonable doubt every essential element of the crime of aggravated murder. *State v. Wagner* and *State v. Green* demonstrate that this court has no difficulty in defining and articulating limited remands when that is what it intends. This court did not order a limited remand in *Boots I.*

Moreover, a court order should not be construed so as to ascribe to a court the intent to produce an unlawful or unconstitutional result. Stated differently, it is more logical to assume that this court fashioned a remedy that would accommodate the values protected by statutory law and the state and federal constitutions. As I demonstrate *infra*, Sections II and III, a limited retrial, *i.e.*, a retrial in which less than all of the elements of aggravated murder are tried, in the circumstances of this case offends the statutory and the state and federal constitutional protections on which defendant relies.

The majority, in effect, permits the trial court to rewrite the *Boots I* remand order to give it a meaning not intended by this court *at that time* and not supported by the plain and unambiguous words of the order, and a meaning that denies defendant of statutory and constitutional protections. For the foregoing reasons, I would hold that the action taken by the trial court on remand did not comport with this court's *Boots I* remand order. Unless the state "[chose] * * * to reduce defendant's conviction to murder under ORS 161.115," that remand order required that any retrial be a complete retrial of all elements of the aggravated murder charge. Because the state did not "choose * * * to reduce the

---

4 "An issue of fact arises upon a plea of not guilty." ORS 136.010.

defendant's conviction to murder under ORS 161.115," defendant is entitled to have an entire new trial for aggravated murder. *Boots I, supra,* 308 Or at 381.

Compounding its error concerning the *Boots I* remand order, the majority, in remanding this case for another retrial because of a prejudicial instructional error, expressly authorizes a limited retrial on the existence of the alleged aggravating factor that makes homicide murder. *See* 315 Or at 581.[5] In that second limited retrial, the majority holds, "the jury may be instructed that defendant's responsibility for the intentional murder of the victim has been established." *Id.* at 581. That holding violates defendant's statutory and state and federal constitutional rights and procedural guarantees, as discussed *infra.*

## II.

## A LIMITED RETRIAL DENIES DEFENDANT A FAIR TRIAL BY JURY AND OTHER RELATED STATUTORY AND CONSTITUTIONAL RIGHTS AND PROCEDURAL GUARANTEES TO WHICH HE WAS ENTITLED

Trial by jury in criminal cases is fundamental to the American system of justice. "Since it was first recognized in Magna Carta, trial by jury has been a prized shield against oppression * * *." *Glasser v. United States,* 315 US 60, 84, 62 S Ct 457, 86 L Ed 680 (1942) (also stating that "[o]ur Constitution transforms that privilege into a right in criminal proceedings in federal court"). ORS 136.001,[6] Article I, section 11, of the Oregon Constitution,[7] and the Sixth Amendment to the Constitution of the United States,[8] made

---

[5] I agree with the majority, 315 Or at 580-81, that in the "retrial" the jury was erroneously instructed by the trial court that defendant committed First Degree Robbery and that that instruction prejudiced defendant.

[6] ORS 136.001(1) provides:

"The defendant in all criminal prosecutions shall have the right to public trial by an impartial jury."

[7] Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *."

[8] The Sixth Amendment to the Constitution of the United States provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right to a * * * public trial, by an impartial jury * * *."

applicable to the states through the Due Process Clause of the Fourteenth Amendment, *Duncan v. Louisiana*, 391 US 145, 156, 88 S Ct 1444, 20 L Ed 2d 491 (1968), transform that privilege into a right in criminal trials.

> "[T]he jury interposes between the accused and his accuser the judgment of laymen who are less tutored perhaps than a judge or panel of judges, but who at the same time are less likely to function or appear as but another arm of the Government that has proceeded against him." *Baldwin v. New York*, 399 US 66, 72, 90 S Ct 1886, 26 L Ed 2d 437 (1970).

The right to a trial by jury includes the right to a jury determination on every factual element essential to the crime charged. *See, e.g.*, ORS 136.320 (the issues of fact that arise on a plea of not guilty "shall be decided by the jury, and all evidence thereon addressed to it"); Article I, section 16, of the Oregon Constitution ("[i]n all criminal cases whatever, the jury shall have the right to determine * * * the facts under the direction of the Court as to the Law"). Thus, the right to a trial by jury extends to each and every fact that must be found to be present to constitute the crime charged, and a trial court may not intrude on that right by telling the jury that any such facts are established by the evidence or otherwise.

The right to a trial by jury for a felony also includes the right to a 12-person jury. *See* ORS 136.210 ("in [felony] cases the trial by jury shall consist of 12 persons unless the parties consent to a less[er] number"). Moreover, the right to a trial by jury for aggravated murder includes the right to be found *guilty only* by a *unanimous* verdict. Or Const Art I, § 11. Read in conjunction with Article I, section 11, of the Oregon Constitution, ORS 136.210 means that the right to a trial by jury for aggravated murder includes *both* the right to have the *same* 12 jurors determine every factual element essential to the crime charged *and* the right to require unanimous agreement of those same 12 jurors for a verdict of guilty.

The importance of the jury's role in a criminal case and the care that a trial court must take not to intrude on any function that the jury is statutorily and constitutionally entitled to perform has been emphasized by this court. *See, e.g., State v. Bashaw*, 296 Or 50, 52, 672 P2d 48 (1983) ("[t]he

court should refrain from issuing any instruction that diminishes [the jury's] responsibility [to weigh and evaluate the credibility of all witnesses] or promotes judicial intervention in an area traditionally reserved for the jury"). A trial court may not, for example, direct a verdict or a partial verdict against a defendant in a criminal case, regardless of how overwhelmingly the evidence may point in that direction. *See State v. Rainey*, 298 Or 459, 465, 693 P2d 635 (1985) ("the trial court may not direct the jury to find a fact that is an element of the crime, even in the absence of rebutting evidence"); Article I, section 16, of the Oregon Constitution (quoted *supra*, 315 Or at 592); Wright, 2 Federal Practice and Procedure: Criminal 2d § 461 at 637 (1982) ("[i]t is quite clear that a court may not direct a verdict of guilty, either in whole or in part. To permit this would invade defendant's constitutionally protected right to trial by jury." (Footnotes omitted)); *Jackson v. Virginia*, 443 US 307, 317 n 10, 99 S Ct 2781, 61 L Ed 2d 560 (1979) (to say that "there can be no appeal from a judgment of acquittal, even if evidence of guilt is overwhelming," means, as a "logical corollary," that the jury is permitted to acquit against the evidence); LaFave and Israel, 2 Criminal Procedure 700, § 21.1 (1984)[9] ("a jury in a criminal case has the power to acquit even where its findings as to the facts, if literally applied to the law as stated by the judge, would have resulted in a conviction. This is because a jury verdict of not guilty is not subject to reversal or to review in any manner whatsoever").

Numerous other procedural guarantees are designed to have the effect of preventing judicial intrusion into the jury process and ensuring the accused the absolute right to a jury determination on all essential elements of the crime charged. *See, e.g.*, ORCP 59 E, made applicable to criminal trials by ORS 136.330(1) ("[t]he judge shall not instruct with respect to matters of fact, nor comment thereon"); OEC 201(g)(2) ("[i]n a criminal case, the court shall instruct the jury that it *may, but is not required* to,

---

[9] The jury's prerogative to acquit against the evidence is sometimes referred to "jury nullification," LaFave and Israel, 2 Criminal Procedure 700, § 21.1 (1984), or the jury's "veto power," Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences*, 78 Mich L Rev 1001, 1015 n 49 (1980).

accept as conclusive any [adjudicative] fact[10] judicially noticed in favor of the prosecution") (emphasis added);[11] and OEC 309(1) ("[t]he judge is not authorized to direct the jury to find a presumed fact against the accused").

An accused also is entitled to a presumption of innocence and is entitled to be acquitted unless his or her guilt is established beyond a reasonable doubt. ORS 10.095(6); ORS 136.415; *State v. Williams*, 313 Or 19, 40, 828 P2d 1006 (1992) (right protected by Due Process Clause of the Fourteenth Amendment to the Constitution of the United States); *id.* at 46-49 (Unis, J., dissenting) (discussing sources of the right); *State v. Arenas*, 253 Or 215, 217, 453 P2d 915 (1969) (discussing constitutional sources of the right); *In re Winship*, 397 US 358, 361-63, 90 S Ct 1068, 25 L Ed 2d 368 (1970) (discussing the right as a constitutional requirement). "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 US 501, 503, 96 S Ct 1691, 48 L Ed 2d 126 (1976). In *State v. Elliott*, 234 Or 522, 527, 383 P2d 382 (1963), this court stated that a reasonable "[d]oubt is only removed when a jury returns a verdict of guilty, for the presumption of innocence is a disputable question which goes with the jury into the jury room for consideration."

---

[10] "Adjudicative facts * * * are facts used by a trier of fact to determine what occurred on the occasion giving rise to the litigation." Strong, *Judicial Notice*, in Evidence 3-4, § 3.3 (Oregon CLE 1986). They are " 'the facts that normally go to the jury in a jury case.' * * * [T]hey are those facts that would have to be proven by evidence if judicial notice were not taken." Mueller & Kirkpatrick, Evidence Under the Rules: Text, Cases, and Problems 851 (1988) (quoting Professor Davis).

[11] Considerations that underlie the rule that a verdict cannot be directed against an accused in a criminal case explain the reason why OEC 201(g)(2) expressly prohibits the use of judicial notice of adjudicative facts where notice would establish an element of a criminal offense. The Commentary to OEC 201(g)(2) explains the rationale for that rule:

"A mandatory instruction on a fact judicially noticed [by the court in favor of the prosecution] removes the issue from the jury's consideration. Judicial notice of an element of the prosecution's prima facie case would thus be contrary to the defendant's Sixth Amendment right to a jury trial." Kirkpatrick, Oregon Evidence 60 (2d ed 1989).

Thus, under OEC 201(g)(2), the right to trial by jury has been fundamentally infringed if the trial court takes one element of the offense from the jury, no matter how indisputable that element is. *See infra*, note 15.

All of the above-mentioned statutory and constitutional provisions and procedural guarantees, of course, make it more difficult for the state to rebut and finally overcome the presumption of innocence that attaches to every criminal defendant. Nonetheless, those provisions and guarantees play a vital role in the administration of justice. They are based on the notion that it is a solemn matter for a society to convict one of its members of a crime and that it is far worse to convict an innocent person than to let a guilty person go free. *See State v. Williams, supra,* 313 Or at 49 (Unis, J., dissenting) (quoting *In re Winship,* 397 US 358, 363, 90 S Ct 1068, 25 L Ed 2d 368 (1970) (Harlan, J., concurring) (stating the latter principle with respect to reasonable doubt standard)).

In this case, the majority holds that the "retrial [(second trial)] limited to whether defendant murdered the victim in order to conceal defendant's identity as the perpetrator of a crime" was permissible. 315 Or at 579. And, as previously stated, the majority, in remanding this case for another retrial because of a prejudicial instructional error, expressly sanctions a second limited retrial on the existence of the aggravating factor that makes the homicide aggravated murder. Those holdings are offensive to the right to trial by jury, the presumption of innocence, and the other related statutory and constitutional rights and procedural guarantees discussed *supra.*

The majority's holdings apparently assume that the "retrial" in this case following *Boots I* was really not a retrial, but was in some way a continuation of the same proceeding on the limited issues not decided without error in the first trial; otherwise, double jeopardy problems involved with two separate prosecutions, discussed *infra* in Section III, are significantly magnified. But if, in fact, the proceeding was simply a continuation of a trial in which a jury had reached an interim unanimous determination that defendant killed the victim, it would clearly be impermissible to then *instruct* that jury that they are bound by that interim determination as they continued deliberating on the issue of whether there were aggravating factors. Jurors are free to discuss and persuade and disagree throughout the process until they ultimately reach a unanimous verdict or must announce that they are unable to do so. This is the nature of jury deliberations. A juror who had

concluded at one point that defendant had committed murder may change his or her mind during deliberations about whether the murder was committed in order to conceal the *identity of the perpetrator of a crime and conclude that* defendant had not committed murder at all. It is not inappropriate for jurors to change their minds during deliberations; many unanimous verdicts likely depend on it.

To the contrary, it would be absurd to suggest that a juror in a criminal case be bound by a preliminary determination made in the midst of the jury's deliberations — so absurd, in fact, that our criminal justice system does not permit any form of inquiry as to preliminary jury determinations and gives full credence only to the final verdict. If a jury reaches an interim unanimous determination that defendant murdered the victim, the jury could not be instructed that they are bound by that determination in further deliberating on the presence of aggravating factors. If the jury were later unable to agree unanimously on a verdict of aggravated murder or murder, a mistrial would be declared because of a hung jury, and any subsequent prosecution would start completely over.

And yet, the majority today decides that it is permissible to allow 12 *new* jurors, who have themselves never decided, much less agreed unanimously beyond a reasonable doubt, that defendant murdered the victim, to be so instructed and to decide *how* that murder was committed. By so doing, the majority denies defendant his right to have one (the same) 12-person jury determine each factual element essential to the aggravated murder charge and denies defendant the right to have each element of the alleged crime decided unanimously.[12] Stated differently, the majority denies defendant his right to have his trial completed by one particular tribunal. The majority permits a bifurcated guilt-phase trial. Two separate 12-person juries determined different elements of the aggravated murder charge. A bifurcation of the guilt phase of defendant's trial denies defendant his

---

[12] Taken to its extreme, the majority's analysis would allow a different 12-person jury to decide each element of a crime and would allow that, as long as each isolated 12-person jury decided unanimously against defendant on that particular element, it would not matter that they did not agree with respect to the other elements. *Boots I* expressly forbids that. *See infra*, 315 Or at 597-99. Thus, the majority analysis allows a conviction where *not a single juror* believes that *all* elements of a crime have been established.

right to be found guilty only by a *unanimous* verdict by one (the same) 12-person jury for any particular alleged crime.

Proceeding with a bifurcated guilt phase with two 12-person juries is logically flawed, because the new jury is being asked to answer a question that is inextricably connected to the question that they are told they cannot answer. That is, it is impossible to answer the question whether defendant killed the victim in an effort to conceal the identity of the perpetrator of a crime unless one first believes that defendant killed the victim. Where the only two choices are (1) that defendant killed the victim to conceal the identity of the perpetrator of a crime or (2) that defendant killed the victim, but not to conceal the identity of the perpetrator of a crime,[13] a person who does not believe that defendant killed the victim cannot answer, much the same way that a person who has never taken a drink cannot answer the question "have you stopped drinking to excess yet" with a "yes" or a "no." Moreover, the verdict form in the limited retrial in this case, quoted *supra*, 315 Or at 585, asked the jury to determine whether "the murder was done to conceal the identity of defendant or an accomplice in the robbery * * *." Thus, the majority would allow *defendant* to be convicted of aggravated murder even if the jury, by indicating on the verdict form that "the murder was done to conceal the identity of the defendant or an accomplice in the robbery," has concluded that *an entirely different person* committed the murder to conceal the identity of the defendant.

Proceeding with a bifurcated guilt phase with two 12-person juries also violates the analysis of this court's opinion in *Boots I*. After a discussion of why a "quoted passage from *[State v.] Hazelett*[, 8 Or App 44, 492 P2d 501 (1972),] is insupportable," *Boots I, supra,* 308 Or at 376, this court stated:

> "*There is no basis for distinguishing between jury agreement on the act required for criminal liability and on the mental element that makes the act culpable.* The act and the culpable

---

[13] The only other option is that the jury fails to agree unanimously about how the murder was committed, resulting in a mistrial because of a hung jury, but even this result forces the jury to say that "we cannot agree as to how defendant committed the murder," leaving the juror who does not believe that defendant committed the murder with no accurate response.

mental state are equally essential for any crime that requires a culpable mental state. ORS 161.095. *Of course jurors cannot convict a defendant if they unanimously agree that he intended to kill a person but only half believe that he did so.* No more can they convict if they unanimously agree that a defendant's act caused a person's death but only half believe that he acted intentionally. The same is true if jurors agree that a defendant's act caused a person's death but do not agree that the defendant committed a felony, or vice versa.

"The need for unanimity is obvious when a charge under ORS 163.095(2)(d) of intentional killing in furtherance of first degree robbery stands alone. *It is obvious when a charge under ORS 163.095(2)(e) of killing in order to conceal the crime or the perpetrator stands alone.* It should be no less obvious when the state charges a defendant both under ORS 163.095(2)(d) and under ORS 163.095(2)(e). *In order to convict, the jury must unanimously agree on the facts required by either subsection.*" *Id.* at 376-77 (emphasis added) (footnote omitted).

This court's analysis in *Boots I* made it clear that the jury must be unanimous on each and every element of the crime. Just as "jurors cannot convict a defendant if they unanimously agree that he intended to kill a person but only half believe that he did so," *id.* at 377, jurors cannot convict a defendant for aggravated murder if they unanimously agree that he intended to conceal the identity of the perpetrator of a crime but only half believe that he killed a person to do so. Yet that is precisely what the majority allows. What this court explicitly stated in *Boots I* applies to the precise scenario that we now confront: "[The need for unanimity] is obvious when a charge under ORS 163.095(2)(e) of killing in order to conceal the crime or the perpetrator stands alone." *Id.* The same jurors must find the mental state required for the crime (here, intent to kill and intent to conceal the identity of the perpetrator of a crime) which find the act required for the crime (here, killing the victim). This court stated it plainly in *Boots I* that "[t]here is no basis for distinguishing between jury agreement on the act required for criminal liability and on the mental element that makes the act culpable," *id.* at 376, and yet the majority today permits such a distinction in this case. This court referred in *Boots I* to the "simple error of counting and adding those jurors who are convinced of any one distinct statutory element," *id.* at 381, and yet the

majority simply commits the same error. This court stated that the proper focus "for each element [is] on the jurors who may not be convinced of that element," *id.*, and yet the majority prevents that inquiry by allowing entirely different jurors to decide different elements of the crime.

Contrary to the explicit teachings of this court in *State v. Rainey, supra,* 298 Or at 465, the majority permits the trial court to direct a partial verdict against defendant on essential elements of the aggravated murder charge. As previously stated, the trial court instructed the jury:

> "To establish the crime of Aggravated Murder the State must prove beyond a reasonable doubt each of the following elements. First, that the act was committed in Lane County, Oregon. Second, that the act was committed on or about June 7, 1983. Three, that the [d]efendant intentionally caused the death of another human being in an effort to conceal the identity of the perpetrator of a crime."

The trial court had already instructed the jury that it was "to take * * * as established facts * * * not to be questioned or re-examined * * * [and] considered true for all purposes of this case" that defendant murdered and robbed the victim and that those acts occurred on June 7, 1983, in Lane County, Oregon.[14] Thus, the trial court directed a partial verdict against defendant, *i.e.*, the jury was told that it must find all elements of the aggravated murder charge, except the aggravating factor. The trial court's instructions and the verdict form given to the jury took otherwise disputable elements of the offense from the jury. In so doing, defendant was also denied the protections to which he was entitled under ORCP 59 E, OEC 201(g)(2),[15] and OEC

---

[14] By virtue of Article I, section 11, of the Oregon Constitution, venue is a material allegation of the indictment and must be proven beyond a reasonable doubt. *State v. Cooksey,* 242 Or 250, 251, 409 P2d 335 (1965).

[15] The Commentary to OEC 201(g)(2), in stating that "the jury should be permitted to hear evidence in disproof of any fact judicially noticed in favor of the prosecution," cites with approval *State v. Lawrence,* 120 Utah 323, 234 P2d 600 (1951). Kirkpatrick, *supra,* at 61. In *State v. Lawrence,* the Supreme Court of Utah reversed a conviction for grand larceny of an automobile. Where the prosecution had neglected to prove the value of the automobile, the trial court instructed the jury that the value of the automobile was over fifty dollars — the threshold level for grand larceny. The court held that the use of judicial notice by the trial court had invaded the defendant's right to a jury trial by removing an element of the offense from the jury. 234 P2d at 603.

309(1), each of which I have discussed *supra*. For the same reasons, the limited retrial that the majority expressly authorizes on remand in this case violates defendant's right to a fair trial by jury and the other related statutory and constitutional rights and procedural guarantees discussed *supra*.

### III.

### A LIMITED RETRIAL VIOLATES DEFENDANT'S STATUTORY AND STATE AND FEDERAL CONSTITUTIONAL PROTECTIONS AGAINST DOUBLE JEOPARDY

In support of his claim that his protections against double jeopardy were violated, defendant cited ORS 131.515,[16] Article I, section 12, of the Oregon Constitution,[17] and the Fifth Amendment to the United States Constitution,[18] as made applicable to the states by the Fourteenth Amendment, *Benton v. Maryland*, 395 US 784, 787, 89 S Ct 2056, 23 L Ed 2d 707 (1969).

---

[16] The Oregon Revised Statutes in ORS Chapter 135 and in ORS 813.200 use the phrase "former jeopardy" in lieu of "double jeopardy," and the Legislative Council Committee has adopted that phrase for section and chapter titles in ORS Chapter 131 and elsewhere. For convenience throughout this opinion, however, the phrase "double jeopardy" is used.

ORS 131.515, provides that, with certain exceptions not relevant to this case in ORS 131.525 and ORS 131.535:

"(1) No person shall be prosecuted twice for the same offense.

"* * * * *

"(3) If a person is prosecuted for an offense consisting of different degrees, the conviction or acquittal resulting therefrom is a bar to a later prosecution for the same offense, for any inferior degree of the offense, for an attempt to commit the offense or for an offense necessarily included therein. *A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the judgment of conviction is subsequently reversed or set aside.*" (Emphasis added).

[17] Article I, section 12, of the Oregon Constitution provides:

"No person shall be put in jeopardy twice for the same offence * * *."

[18] The Fifth Amendment to the United States Constitution provides:

"* * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * *."

In *State v. Rogers*, 313 Or 356, 375, 836 P2d 1308 (1992), this court stated that the rule of issue preclusion[19] in Oregon is essentially the same as the collateral estoppel component of the Double Jeopardy Clauses of the Fourteenth Amendment to the Constitution of the United States. In *Ashe v. Swenson*, 397 US 436, 437-44, 90 S Ct 1189, 25 L Ed 2d 469 (1970), the Supreme Court of the United States recognized that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel. In that case, a group of masked men had robbed six men playing poker in the basement of a home. The state unsuccessfully prosecuted Ashe for robbing one of the men. Six weeks later, however, Ashe was convicted for the robbery of one of the other players. Applying the doctrine of collateral estoppel that the court found implicit in the Double Jeopardy Clause, the court reversed Ashe's conviction, holding that his acquittal in the first trial precluded the state from charging him for the second offense. *Id.* at 445-47. In *Ashe*, the court defined the collateral estoppel doctrine as providing that *"when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id.* at 443 (emphasis added). Ashe's acquittal in the first trial foreclosed the second trial because, in the circumstances of that case, the verdict of acquittal could only have meant that the jury was unable to conclude beyond a reasonable doubt that the defendant was one of the robbers. A second prosecution was impermissible because, to have convicted Ashe in the second trial, the second jury had to have reached a directly contrary conclusion. *Id.* at 445. In *Ashe*, the court specifically noted that "mutuality" was not an ingredient of the collateral estoppel rule imposed by the Fifth and Fourteenth Amendments upon the States. *Id.* at 443. In a dissenting opinion, Chief Justice Burger observed:[20]

> *"[C]ourts that have applied the collateral-estoppel concept to criminal actions would certainly not apply it to both parties,*

---

[19] This court has stated that it is more precise to refer to "collateral estoppel" as "issue preclusion." *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990). Because the Supreme Court of the United States uses the term "collateral estoppel," the terms "issue preclusion" and "collateral estoppel" are used interchangeably throughout this opinion.

[20] This particular statement in Chief Justice Burger's dissent was not expressing disagreement with the majority.

*as is true in civil cases, i.e., here, if Ashe had been convicted at the first trial, presumably no court would then hold that he was thereby foreclosed from litigating the identification issue at the second trial." Id.* at 464-65 (Burger, C. J., dissenting) (some emphasis added) (footnote omitted).

In *Simpson v. Florida*, 403 US 384, 386, 91 S Ct 1801, 29 L Ed 2d 549 (1971), the court, noting that "mutuality" is not an ingredient of the *Ashe* rule, held that the defendant's conviction at his first trial (reversed on appeal for failure to instruct the jury on a lesser included offense) did not estop him from claiming that the state failed to prove his identity at the second trial. *Simpson v. Florida, supra,* suggests that the Supreme Court agreed with the observation of Chief Justice Burger in *Ashe, i.e.,* collateral estoppel cannot be used against an accused in a criminal case.[21] A prior adjudication with respect to an element of a subsequently-tried offense is not binding on the accused. The prohibition on collateral estoppel against an accused in a criminal case applies even where a prior jury has already found facts adverse to the accused, even where a defendant enjoyed a right to be heard by a jury, to confront witnesses, or to enjoy his procedural guarantees at trial.

One commentator suggests that the prohibition against using collateral estoppel against an accused in a criminal case is "based on the notion that by removing certain issues from a jury's consideration, collateral estoppel blinds the jury to the 'whole picture' of a defendant's conduct and thus denies the jury an informational basis on which to exercise its veto power." Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences,* 78 Mich L Rev 1001, 1015 n 49 (1980). The jury's prerogative to acquit against the evidence "has solid historical credentials." LaFave and Israel, *supra,* at 700. *See*

---

[21] This court has recognized that collateral estoppel (issue preclusion) applies in criminal cases. *See State v. Rogers*, 313 Or 356, 374, 836 P2d 1308 (1992) (noting that "[i]n *State v. Dewey*, 206 Or 496, 504-08, 292 P2d 799 (1956), this court held that ORS 43.160, which states a rule of issue preclusion that has its genesis in the common law, applies in criminal cases"). This court, however, has never squarely addressed the question whether issue preclusion applies against a defendant in a criminal case. This court has stated, however, that the rule of issue preclusion in Oregon is essentially the same as the collateral estoppel component of the Due Process Clause of the federal constitution. *State v. Rogers, supra,* 313 Or at 375.

*Jackson v. Virginia, supra,* 443 US at 317 n 10 (to say that "there can be no appeal from a judgment of acquittal, even if evidence of guilt is overwhelming," means, as a "logical corollary," that the jury is permitted to acquit against the evidence). "[A] jury in a criminal case has the power to acquit even when its findings as to the facts, if literally applied to the law as stated by the judge, would have resulted in a conviction. This is because a jury verdict of not guilty is not subject to reversal or to review in any manner whatsoever." LaFave and Israel, *supra,* at 700.

To reach its conclusion that the limited retrial is permissible, the majority ignores the inapplicability of the collateral estoppel doctrine against an accused in a criminal case. The majority holds, in effect, that an adverse factual determination in a prior criminal trial can estop an accused in a criminal case from relitigating an essential element of an offense charged in a subsequent prosecution. That holding is wrong.

There is another flaw in the majority's reasoning. The majority states that, in his original trial (*Boots I*), defendant was found guilty (convicted) of the lesser-included offense of murder. 315 Or at 577, 579.[22] If the majority were correct (it is not) that, in *Boots I*, defendant was actually convicted of the lesser-included offense of murder, it would follow that defendant was implicitly acquitted of the greater offense, aggravated murder, and could not then be tried for that offense again. If that were true, the statutory and constitutional double jeopardy provisions, discussed *supra,* would prohibit a retrial of defendant for the greater crime (aggravated murder). *See* ORS 131.515(3) ("[a] finding of guilty of a lesser included offense [murder] is an acquittal of the greater inclusive offense [aggravated murder]"); *State v. Steeves,* 29 Or 85, 111, 43 P 947 (1896) (under Article I, section 12, of the Oregon Constitution, "a conviction of a lower degree necessarily included within an indictment charging the commission of a greater crime, operates as an acquittal of all the degrees above it, and * * * a new trial * * * must be confined to a retrial of the charge upon which the accused

---

[22] Specifically, the majority states that "*defendant was convicted,* without error, *in his first trial of the crime of murder,* ORS 163.115." 315 Or at 579 (emphasis added) (citing *State v. Boots, supra,* 308 Or at 373).

was convicted, or of a lower degree"); *Price v. Georgia*, 398 US 323, 329, 90 S Ct 1757, 26 L Ed 2d 300 (1970) (defendant charged with murder but convicted of lesser included offense of manslaughter impliedly acquitted and may not be retried for murder); and *Grady v. Corbin*, 495 US 508, 521, 110 S Ct 2084, 109 L Ed 2d 548 (1990) ("the Double Jeopardy Clause [of the Fifth Amendment to the United States Constitution] bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.").[23]

But defendant was *not* convicted of the lesser included offense of murder in *Boots I*. It is true that, in

---

[23] In *Grady v. Corbin*, 495 US 508, 521, 110 S Ct 2084, 109 L Ed 2d 548 (1990), the Supreme Court of the United States held that, if conduct previously prosecuted is being used to establish an "essential element" in the second prosecution, the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States bars the second prosecution. *Grady v. Corbin* involved a defendant who had driven his automobile across the median line of a two-way highway and struck an oncoming automobile, killing one of the occupants. The state charged the defendant with driving while intoxicated and with failing to keep right of the median, and the defendant pleaded guilty to those two traffic violations. Two months later, the state prosecuted the defendant on homicide and assault charges arising from the accident. Defendant argued that the latter prosecution violated his rights under the double jeopardy clause. In its decision, the court recognized its previous holdings that the traditional *Blockburger* test (from *Blockburger v. United States*, 284 US 299, 304, 52 S Ct 180, 76 L Ed 306 (1932)) governing double jeopardy claims bars a subsequent prosecution if one of the two offenses is a lesser included offense of the other. 495 US at 519-20 (citing *Brown v. Ohio*, 432 US 161, 166-67 n 6, 97 S Ct 2221, 53 L Ed 2d 187 (1977); *Harris v. Oklahoma*, 433 US 682, 682-83, 97 S Ct 2912, 53 L Ed 2d 1054 (1977)). Although the traffic offenses involved in *Grady v. Corbin* were not technically lesser included offenses of the homicide and assault charges, the Supreme Court analogized the case to the situation it had previously confronted in *Illinois v. Vitale*, 447 US 410, 100 S Ct 2260, 65 L Ed 2d 228 (1980). *Grady v. Corbin, supra*, 495 US at 520-21.

In *Illinois v. Vitale, supra*, 447 US at 413, the state sought to prosecute the defendant for involuntary manslaughter after a car accident. The Supreme Court stated, in *dicta*, that, if the state found it necessary to rely on a previous conviction for failure to reduce speed to sustain the manslaughter charge, the Double Jeopardy Clause might protect the defendant. *See id.* at 420-21. Despite the fact that neither offense was technically a lesser included offense of the other, the Supreme Court observed that, in such a circumstance, the failure to slow offense might be viewed as a "species of lesser-included offense." *Id.* at 420. In *Grady v. Corbin, supra*, 495 US at 521, the state sought to rely on the two previous traffic offenses which served as the basis for convictions to sustain the homicide and assault charges, presenting the situation about which the court had speculated in *Illinois v. Vitale*. In concluding that the Double Jeopardy Clause barred the subsequent prosecutions for homicide and assault, the Supreme Court adopted the suggestion that it previously had made in *dictum* in *Illinois v. Vitale. Id.* at 521.

*Boots I*, this court allowed the state to "choose whether to reduce the defendant's conviction and sentence to murder under ORS 163.115 or to retry the charge of aggravated murder." In *Boots I*, this court acknowledged that, in returning a verdict of guilty of aggravated murder, "[i]t [was] not disputed that the jury agreed that defendant committed murder," *Boots I, supra,* 308 Or at 373, but defendant was not convicted of murder in the first trial.

Rather, defendant was convicted of aggravated murder in the first trial, a conviction which was reversed by *Boots I*. The first choice allowed by the *Boots I* remand order, reducing defendant's conviction and sentencing for murder,[24] was permissible because murder is a lesser included offense of aggravated murder of which defendant was convicted, and the error found in *Boots I* only affected the greater offense. *See supra,* note 2. Reducing defendant's conviction to murder would have had the same effect of a jury convicting defendant of murder — it would serve as an implicit acquittal of the greater offense of aggravated murder.

The second choice allowed by the *Boots I* remand order, retrying the charge of aggravated murder, was also permissible because the Double Jeopardy Clause is not an absolute bar to successive trials. The general rule is that the Clause does not bar re-prosecution of the defendant whose conviction is overturned on appeal. *United States v. Jorn,* 400 US 470, 484, 91 S Ct 547, 27 L Ed 2d 543 (1971) (citing *United States v. Ball,* 163 US 662, 16 S Ct 1192, 41 L Ed 300 (1896)). *See also* ORS 131.525(1)(b)(B).[25]

---

[24] The order allowed the state to choose to reduce the conviction *from* aggravated murder (which was reversed) *to* murder, not to eliminate the aggravated murder conviction and retain a murder conviction, because there was no murder conviction. A person cannot be convicted of both aggravated murder and murder for the same crime.

[25] ORS 131.525(1)(b)(B) provides:

"(1) A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution was properly terminated under any of the following circumstances:

"* * * * *

"(b) The trial court finds that a termination, other than by judgment of acquittal, is necessary because:

"* * * * *

But the state requested, the trial court allowed, and now this court sanctions the state combining, rather than choosing between, the two options that this court permitted in the *Boots I* remand order. The majority allows the trial court to reduce defendant's conviction in *Boots I* to murder and to retry the remaining elements in the aggravated murder charge. Either the majority is considering this limited retrial to simply be a continuation of the previous trial for aggravated murder, the absurdity of which is demonstrated *supra*, 315 Or at 595-98, or the majority is considering the retrial to be a separate trial for aggravated murder. If the majority is considering this to be a separate trial for aggravated murder, the majority is simultaneously allowing what it considers to be a separate previous conviction in *Boots I* for the lesser included offense of murder to serve as the basis for the proof of the present charge of aggravated murder in this case. For reasons stated *supra*, the statutory and constitutional problems with this approach are insurmountable.

## IV.

## CONCLUSION

The central purpose of our criminal justice system is to convict the guilty and to free the innocent. *Herrera v. Collins*, ___ US ___, ___, 113 S Ct 853, 859, 122 L Ed 2d 203 (1993). "[I]n state criminal proceedings[,] the trial is the paramount event for determining the guilt or innocence of the defendant." *Id*. at 869. There should not be any dispute that a defendant in a criminal case has valued statutory and constitutional rights and procedural guarantees that must be accommodated at trial. The limited retrial permitted by the majority here violates its own remand order in *Boots I*, ignores defendant's right to a fair and impartial trial by jury, ignores defendant's statutory and constitutional protections against double jeopardy, and ignores certain other related statutory and constitutional rights and procedural guarantees, identified *supra*.[26]

---

"(B) There is a legal defect in the proceeding that would make any judgment entered upon a verdict reversible as a matter of law * * *."

[26] Because I believe that defendant is entitled to have an entire new trial for aggravated murder, it is not necessary to discuss defendant's other assignments of error.

The case at hand demonstrates the futility of attempting to substitute efficiency for statutory and constitutional requirements. Surely the goal of judicial economy would have been accomplished far more easily by protecting defendant's statutory and constitutional rights in the first place. I fear that the rippling effect from the majority's decision could be far-reaching.

I respectfully dissent.

Carson, C. J., and Fadeley, J., join in this dissenting opinion.