Argued and submitted September 23, 1996, affirmed June 11, 1997

STATE OF OREGON,
*Respondent,*

*v.*

TERESA HOPE SHOUSE,
*Appellant.*

(95CR-0404; CA A88785)

941 P2d 546

James N. Varner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

Armstrong, J., dissenting.

## WARREN, P. J.

Defendant appeals her conviction for assault in the first degree. ORS 163.185. We affirm.

The assault charge arose from an incident involving defendant, her ex-girlfriend, Mary, and Mary's current boyfriend, Gus, the victim. Defendant lived three houses from where Gus lived with Mary and her three children. A letter addressed to defendant had been delivered to Gus and Mary's home. Gus took the letter to defendant's house and left it with her roommate. Later, while Gus and Mary were eating dinner, defendant repeatedly called their home. They ignored the calls for a while, but, eventually, Gus decided to speak to defendant to get her to leave them alone. Defendant was upset with Gus and accused him of threatening her. She told him she wanted to "fuck [him] up" and he told her "to come on down." She did and then stood outside their house yelling at them. Gus went outside to talk to defendant, and Mary followed, standing right behind him. Defendant spat on Mary and she responded by taking "a swipe" at defendant, hitting her. Gus turned around to move Mary back and defendant stabbed him.

The state charged defendant with assault in the first degree. The state also alleged that Gus "did not substantially contribute to the commission of the offense * * * by precipitating the attack." If proven beyond a reasonable doubt, that allegation would raise the assault from category 9 to category 10 on the crime seriousness scale. OAR 213-04-002; App 3.[1]

At trial, defendant claimed that she had stabbed Gus in self-defense. Gus and defendant met and became friends in May 1994 but, by that October, the relationship had ended. Gus, by then, was involved with Mary and had

---

[1] Assault in the first degree is subclassified in the following manner:

**"Crime Category 10**

"Assault I shall be ranked at Crime Category 10 if the victim(s) did not substantially contribute to the commission of the offense by precipitating the attack.

**"Crime Category 9**

"Assault I shall be ranked at Crime Category 9 if the victim(s) substantially contributed to the commission of the offense by precipitating the attack."

assisted Mary in obtaining a restraining order against defendant. Defendant testified that she generally made a "nuisance of herself" after her break-up with Mary, but she asserted that she had not threatened Gus, Mary or Mary's family. She testified that Gus constantly threatened her between October 1994 and the night of the assault, which occurred on February 14, 1995. She believed that Gus wanted to fight her. Gus acknowledged that he "probably" threatened defendant "at the same level" that she had threatened him, but stated that he was doing it in retaliation for her threats and that he had made the threats to get her to leave him, Mary and her family alone. In addition, several witnesses testified about specific threatening acts by Gus toward defendant. Defendant testified that she believed that Gus was turning to retrieve a machete to use against defendant and that she had stabbed him in self-defense.

The court gave the jury a special verdict form that asked it to determine whether Gus had substantially contributed to the commission of the offense by precipitating the attack. During its deliberations, the jury posed the following question to the court:

> "Can we the jurors consider events (threats) that took place outside the window where the attack occurred in determining [Gus's] contribution in precipitating it?"

After meeting with the parties, the court asked the jury to explain what it meant by "window." The jury responded: "The actual time of stabbing or moments just prior to it when defendant was in [Gus's] face."

The state argued that the jury should be instructed that it could consider only the events immediately surrounding the attack. Defendant argued that the court should not place any limitation on the jury, stating:

> "The jury as the factfinder, in looking at this enhancement, has to decide in a common sense way what the word precipitate means, and they have to look at that and use their common sense. If there is nothing that we can give them to help them do that, then I don't think we can also limit them in any way."

The court agreed with the state and instructed the jury:

> "The Court's made a decision that the jury, when it is answering the question and answering the question only, that *you're to confine your deliberations to the events at or near the time of the actual attack*. Now, I want to make that clear. That doesn't mean when it comes to the assault—in your deliberations on the assault you can still consider all of the events that you heard in the evidence as it related to the issue of self-defense. *But for purposes of answering the question, and that was whether or not [Gus] was involved in precipitating it, you're to confine your consideration of the evidence to that evidence that occurred at or near the time of the attack*." (Emphasis supplied.)

The jury unanimously found defendant guilty of assault in the first degree and eleven of its members concluded that Gus had not substantially contributed to the commission of the offense by precipitating the attack. The other juror concluded that he had. Defendant's assault conviction therefore ranked as a category 10 offense on the crime seriousness scale, and the court sentenced defendant accordingly.

Defendant assigns error to the court's instruction to the jury that, when determining whether Gus substantially contributed to the commission of the offense by precipitating the assault, it had to "confine [its] deliberations to the events at or near the time of the actual attack." She argues that all of the evidence about the parties' relationship was relevant to that determination. The state counters that the evidence could not be considered relevant because past threats and events cannot, by definition, "precipitate" an attack.[2] It argues:

> "The word's connotation of suddenness and immediacy suggests that a victim does not 'precipitate' an attack by a prior course of conduct toward the defendant, no matter how provocative, but rather by acts or words that trigger a sudden and immediate attack by the defendant."

---

[2] *Webster's Third New International Dictionary* 1784 (unabridged ed 1993) defines precipitate as follows:

"2a: to cause to move or act very rapidly: urge or press on with eager haste or violence * * * b: to cause to happen or come to a crisis suddenly, unexpectedly or too soon: bring on quickly or abruptly[.]"

It concludes, therefore, that "[e]vidence of the victim's conduct at or near the time of the attack * * * would be relevant; his conduct on prior occasions would not be." We agree with the state.

Neither the sentencing guidelines nor the commentary to them offers any explicit guidance on the meaning of the relevant language. OAR 253-04-002(2) provides, however, that a single statutory offense "may be subclassified factually in more than one crime category to capture the full range of criminal conduct covered by the statutory offense." In the context of assault, the language of the two subcategories emphasizes "that an unprovoked assault is a more serious offense" than a provoked assault. *State v. Guthrie*, 112 Or App 102, 106, 828 P2d 462 (1992).[3]

> "The seriousness of an assault can depend, in part, on whether a defendant justifiably reacted to a victim's conduct. A jury can evaluate the circumstances and determine the culpability, if any, that a victim may share in provoking an assault." *Id*.

The issue in this case is what "circumstances" are relevant to that determination. We agree with the state that the phrase "precipitating the attack" connotes a sense of immediacy. To precipitate an assault, the victim must take some identifiable action to which the defendant responds by attacking him or her. We reject defendant's argument that events that precipitate an attack may include all the past encounters between the participants in an assault that may contribute to their dislike for each other. Although those facts may be relevant for other reasons, the inquiry for the purpose of determining whether the victim precipitated the attack focuses on a much narrower segment of time. Correctly understood, the question is whether the event, the attack, was "cause[d] to happen * * * suddenly, unexpectedly or too

---

[3] In our discussion of OAR 213-04-002, App 3, in *Guthrie*, we responded to the defendant's argument that the language of the subcategory was unconstitutionally vague. Speaking generally, we concluded that the subcategory language was not unconstitutionally infirm. The word "provoke" does not appear in OAR 213-04-002, App 3. By our use of the word "provoke" in *Guthrie*, however, we did not mean to equate "provoke" with "precipitate." In that context, we did not need to focus on, and impart precise meaning to the specific language of the rule, as we do in this case, where the meaning of "precipitate" is directly in issue.

soon[.]" *Webster's Third New International Dictionary* 1784 (unabridged ed 1993).

Contrary to the position defendant takes here, the rule plainly distinguishes between the victim's contribution to the ongoing acrimony between the parties, contrasted with his contribution to the isolated exchange in which he was stabbed. The language of the rule provides that a victim "substantial[ly] contribut[es]" to the assault where the victim "precipitat[es] the attack." OAR 213-04-002; App 3. It cannot be put any plainer. The focus of the rule is not, as defendant implies, on the phrase "substantially contributes" but on "precipitat[es]." The factfinder need only inquire whether the victim's conduct contributed to the attack when it occurred. In that light, the state is correct, because past threats and events have no bearing on whether a confrontation suddenly erupts in violence. The inquiry should be limited to the context of the isolated exchange in which the victim was stabbed and what caused it to occur then. The trial court did not err.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority asserts that, under OAR 213-04-002 App 3, a factfinder must focus only on "the isolated exchange in which the victim was" assaulted in order to decide whether the victim precipitated the assault. 148 Or App at 280. Because I believe that the factfinder should be allowed to consider all of the relevant evidence in making that decision, I dissent.

Under the sentencing guidelines, if the state pleads and proves that the victim of an assault "did not substantially contribute to the commission of the offense by precipitating the attack," then the defendant's crime is considered a subcategory 10 crime on the crime seriousness scale. If the state does not plead and prove that, the assault is considered a subcategory 9 crime. The distinction is intended to emphasize "that an unprovoked assault is a more serious offense" than a provoked assault. *State v. Guthrie*, 112 Or App 102, 106, 828 P2d 462 (1992).

Generally, it is up to the factfinder to "evaluate the circumstances and determine the culpability, if any, that a

victim may share in provoking an assault." *Id.* The majority concludes that past events could never affect that evaluation. It bases that opinion on two preliminary conclusions. First, it concludes that

> "the phrase 'precipitating the attack' connotes a sense of immediacy. To precipitate an assault, the victim must take some identifiable action to which the defendant responds by attacking him or her."

148 Or App at 279. Second, it determines that "past threats and events have no bearing on whether a confrontation suddenly erupts in violence." 148 Or App at 280. While I agree with the majority's first premise, I disagree with its second. Events that precede those "at or near the actual attack" can be relevant in determining whether the victim precipitated the attack. When viewed in isolation, a comment or act may appear to be innocuous. When viewed in the context of the parties' past interactions, however, the same comment or act could be provocative.

An example illustrates the point. Assume that the defendant and the victim have had a hostile relationship for years. For months before the assault, the victim called the defendant several times each day to harass and threaten her. The defendant obtained a restraining order against the victim that prohibited him from calling her or coming within 100 feet of her home. They then run into each other at a grocery store and, again, the victim threatens the defendant. Upset, the defendant tells the victim that if she ever sees him anywhere near her house, she will "take care of him" herself. The victim knows that the defendant is threatening physical violence. Because he outweighs her by one hundred pounds, he is not concerned by her threat. In fact, he decides that it would be sweet revenge if he could get her arrested for assault. Therefore, for the express purpose of provoking an assault, a few days later the victim goes over to the defendant's house and stands outside on the sidewalk. Enraged, the defendant runs outside and stabs the victim.

The defendant is convicted of assault in the first degree. The state also alleges that the victim did not substantially contribute to the offense by precipitating the assault. Under the majority's standard, the factfinder would have to

limit its inquiry "to the context of the isolated exchange in which the victim was" assaulted. 148 Or App at 280. That is, the factfinder would have to consider whether the victim precipitated the assault by standing outside the defendant's home. That behavior, considered in isolation, is completely innocuous. As a result, although the victim intentionally provoked the assault, under the majority's view, the factfinder would have to conclude that the victim did not. Therefore, the defendant's crime would be elevated to subcategory 10 on the crime seriousness scale. In the context of the facts described, however, a factfinder might find that standing outside the defendant's home *did* precipitate the assault. Because the evidence of the parties' past interactions would be relevant to that determination, the factfinder should be permitted to consider it.

Likewise, in this case, the evidence about the parties' past relationship informs the events that took place the evening of the assault. The victim acknowledged that he and the defendant had been constantly harassing and threatening each other "at the same level" during the four months before the assault. Defendant testified that she believed that the victim wanted to fight her. The victim testified that he made it clear to defendant that he would do what was necessary to protect himself, Mary and her family. Although the victim helped Mary obtain a restraining order against defendant, and frequently called the police to report that defendant was violating it, he still invited her down to the house that evening. Far from having "no bearing" on whether the confrontation on February 14, 1994, "suddenly erupted in violence," those past threats and events provide an essential context for understanding what took place that evening. The jury would have been better able to evaluate the victim's actions and whether those actions were intended to, or could be reasonably expected to, provoke an assault if it had been permitted to consider those actions in context. The court erred, therefore, when it instructed the jury that, in making its determination on that issue, it could consider only the "events at or near the time of the actual attack."

The error is significant. The crime seriousness scale is one axis on the sentencing guidelines grid that guides the court in determining a convicted defendant's presumptive

sentence. OAR 213-04-001, App 1. The criminal history scale serves as the horizontal axis on the grid. *Id.* Defendant's criminal history placed her in category F on the criminal history scale. Therefore, defendant faced a presumptive sentence between either 41 to 45 months or 71 to 80 months, depending on whether the assault she committed was categorized as a category 9 or a category 10 crime. *Id.* Because the court told the jury not to consider all of the relevant evidence in making the finding that would determine where defendant's crime would be placed on the crime seriousness scale, we should remand the case to retry that issue. *See State v. Boots*, 315 Or 572, 848 P2d 76, *cert den* 510 US 1013 (1993).