Argued and submitted October 6, affirmed November 15, 1983

## STATE OF OREGON,
*Respondent on review,*

*v.*

## DANIEL LEWIS BASHAW,
*Petitioner on review.*

(Nos. 81-0475/82-1148, CA A26802/A26803, SC 29804)

672 P2d 48

John Daugirda, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition and brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. On the brief were

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Linda Acaldo, Assistant Attorney General, Salem.

JONES, J.

### JONES, J.

Defendant seeks reversal of his convictions for first degree rape and attempted rape in the first degree, ORS 163.375, contending that the trial court erred by refusing to give the following instruction:

> "A charge such as that made against the defendant in this case is one which is easily made and once made difficult to defend against even if the person accused is innocent. Therefore, the law requires that you examine the testimony of the female person named in the Information with caution."

The state alleged that the defendant raped a 12-year-old child and attempted to rape an 11-year-old child. Considerable testimony flowed back and forth during the trial regarding the credibility of the victims. The defendant was able to present the testimony of several witnesses who impeached the children on certain points and several witnesses who offered damaging character testimony about the children. Further, the defendant also took the stand and categorically denied the rape and attempted rape allegations.

■■■ The instruction requested by the defendant should never be given in any rape case. Such an instruction may imply to a jury that the court is expressing reservations about the credibility of the alleged victim. It is the jury that is charged with the duty to weigh and evaluate the credibility of all witnesses. The court should refrain from issuing any instruction that diminishes this responsibility or promotes judicial intervention in an area traditionally reserved for the jury. *State v. Mains,* 295 Or 640, 669 P2d 1112 (1983).

The requested instruction quoted above was given apparent approval by the Court of Appeals in *State v. Stocker,* 11 Or App 617, 619, 503 P2d 501 (1972), *rev den* (1973).[1] It was

---

[1] In three post-*Stocker* cases, the Court of Appeals has ruled there was no abuse of discretion in failing to give a similar cautionary instruction. *See, State v. Romel,* 57 Or App 372, 377-78, 644 P2d 643 (1982); *State v. Blake,* 53 Or App 906, 909, 633 P2d 831 (1981), *rev dismissed* 292 Or 486 (1982); *State v. Harwood,* 45 Or App 931, 609 P2d 1312, *rev den* 289 Or 337 (1980). In *Harwood,* the Court of Appeals held:

> "Defendant correctly points out that this instruction was approved in *State v. Stocker.* [Citation omitted.] Giving the cautionary instruction was discretionary with the trial court, however, and we do not believe the court abused its discretion in refusing to give it. *State v. Yates,* 239 Or 596, 599, 399 P2d 161 (1965)." *Harwood,* 45 Or App at 941.

spawned in Oregon over 70 years ago in *State v. Friddles*, 62 Or 209, 210, 123 P 904 (1912). Justice Henry J. Bean, writing for the court, said, "The charge of rape is one which, as Lord Hale observes, is 'an accusation easily to be made, hard to be proved, and harder to be defended by the party accused though never so innocent.' "

We do not know what made Lord Chief Justice Matthew Hale[2] an authority on defense against rape for his day, but his comment does not reflect contemporary thought or experience. His comment reflects a view of the rape victim and the crime of rape which simply is not borne out. The jury instruction which arose from this view assumes that the charge of rape is easily made. In fact, quite the opposite is true. Rape is one of the most under-reported crimes.[3] The crime is one of degradation as well as violence, and fear of reprisal and embarrassment contributes to the victim's hesitation to report it. Those who do report it must confront the trauma of the encounter with the police, the investigation of the crime and the ordeal of trial.[4]

---

Rather than give the *Stocker* instruction, the trial judge in the present case gave a standard credibility instruction as follows:

"* * * Every witness is presumed to speak the truth. This presumption may be overcome by the manner in which the witness testifies, by the nature of his or her testimony, by evidence affecting his or her character, interest or motives by contradictory evidence, or by a presumption. A witness found to be intentionally false in part of his or her testimony may be distrusted in others."

[2] Matthew Hale, History of the Pleas of the Crown, Philadelphia: R.H. Small, 1847, Vol I, p 634.

[3] Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 Colum L Rev 1, 5 (1977) citing *Federal Bureau of Investigation, Uniform Crime Reports for the United States* (1974). Berger notes that "[e]stimates of the actual incidence of rape * * *, range from three and one half to twenty times the reported figure! The system's perceived hostility to the rape complainant, coupled with the singular shame and trauma of sexual assault, may well explain this troubling phenomenon." *Ibid.*

[4] Police treatment of the rape victim, often unsympathetic, has been documented in Galton, *Police Processing of Rape Complaints*, 4 Am J Crim L 15 (1975-76); Weis & Borges, Victimology and Rape: *The Case of the Legitimate Victim, in Rape Victimology* (L. Schultz ed 1975) at 131-32; Comment, *Police Discretion and the Judgment that a Crime Has Been Committed—Rape in Philadelphia*, 117 U Pa L Rev 277 (1968). In Man's Trial, Woman's Tribulation, *supra* n 3, Berger examines the trial from the victim's perspective. Much of her criticism is directed at cross-examination of the victim concerning her past sexual behavior, a practice regulated in Oregon by OEC 412. The victim may still be compelled to testify at a closed hearing regarding these matters in order to determine relevance to the trial. OEC 412(2)(b). *See also* S. Brownmiller, *Against Our Will* 364-74 (1975).

The instruction also states that the charge of rape is more difficult to defend against than other crimes. Once again, statistics throw doubt upon this assumption underlying the instruction:

"\* \* \* Of adults arrested, only sixty percent were charged. In almost half of these prosecutions, acquittals or dismissals ensued; in thirty-five percent, the defendant was convicted of rape; in sixteen percent, of some lesser offense. As compared with overall so-called 'Index Crime' statistics, these charging and conviction figures rank very low." (Footnotes omitted.) Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 Colum L Rev 1, 6 (1977).[5]

In short, we find no reason to continue the institutional assumption that alleged rape victims are less trustworthy witnesses than other victims of crime.[6] We note that we are among a growing number of jurisdictions that have jettisoned the cautionary instruction. *See,* Arabian, *The Cautionary Instruction in Sex Cases: A Lingering Insult,* 10 SW U L Rev 585 (1978).

We do not say a trial court may never approve a cautionary instruction involving a witness. The interest of justice may require an appropriate instruction in a special situation.[7] But, this is not such a case. A witness should not be

---

[5] Prosecution and conviction rates for the other FBI index crimes (murder, nonnegligent manslaughter, aggravated assault, burglary, larceny and motor vehicle theft) during the same time period were as follows: 81 percent of adults arrested were prosecuted; 70 percent were found guilty, 9 percent of a lesser charge. Berger, *supra* at n 3, 77 Colum L Rev at 6, n 36, extracted these figures from the FBI's 1974 Uniform Crime Reports. Recent reforms in the law of rape, changes in society's attitude toward the rape victim, and a recognition on the part of the law enforcement community of the severity of the crime, may contribute to a conviction rate more in keeping with that of other crimes of violence. *See* Berger, *supra* at n 3, 77 Colum L Rev at 5-6.

[6] Berger writes:

"The data [that police disregard a disproportionately high number of rape charges as 'unfounded'] suggest that officialdom rarely errs on the side of credulity. On the contrary, all the evidence points to a finding that many justified accusations never receive a fair hearing. The facts on underreporting, moreover, imply that the number of legitimate victims deterred from complaint by considerations like courtroom treatment vastly exceeds the crew of notoriety and vengeance seekers in whose overblown image the law has been structured." (Footnotes omitted.) Berger, *supra* at n 3, 77 Colum L Rev at 29.

[7] ORS 10.095 requires the jury to be instructed by the court on proper occasions:

"The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it

cloaked with a judicially implied credibility taint simply because the witness claims to be the victim of a rape. We hold the trial court was correct in refusing to give the requested instruction.

The Court of Appeals is affirmed.

---

is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions:

"(1) That their power of judging of the effect of evidence is not arbitrary, but to be exercised with legal discretion, and in subordination to the rules of evidence;

"(2) That they are not bound to find in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number, or against a presumption or other evidence satisfying their minds;

"(3) That a witness false in one part of the testimony of the witness is to be distrusted in others;

"(4) That the testimony of an accomplice ought to be viewed with distrust, and the oral admissions of a party with caution;

"(5) That in civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the preponderance of the evidence;

"(6) That in criminal cases a person is innocent of a crime or wrong until the prosecution proves otherwise, and guilt shall be established beyond reasonable doubt;

"(7) That evidence is to be estimated, not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and, therefore,

"(8) That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."