# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

CANDELARIO SILVESTRE BELTRAN-
MUNGUIA,

    *Defendant-Appellant.*

No. 06-30118

D.C. No.
CR-05-00169-LRS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted
November 14, 2006—Seattle, Washington

Filed June 7, 2007

Before: Pamela Ann Rymer, Marsha S. Berzon, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Judge Rymer;
Concurrence by Judge Tallman

**COUNSEL**

Kathleen Moran, Federal Defenders of Eastern Washington & Idaho, Spokane, Washington, for the defendant-appellant.

James A. McDevitt, Acting United States Attorney for the Eastern District of Washington, Spokane, Washington; Pamela J. Byerly, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

---

**OPINION**

BERZON, Circuit Judge:

Candelario Silvestre Beltran-Munguia pleaded guilty, under 8 U.S.C. § 1326, to unlawful reentry into the United States. Sentences for that offense are governed by United States Sentencing Guideline § 2L1.2. This case presents the question whether a prior felony conviction under Oregon Revised Statute (ORS) section 163.425 for sexual abuse in the second degree qualifies as a "crime of violence" for purposes of that guideline. We hold that it does not, both because the state statute does not make force — be it used, attempted, or threatened — an element of the crime and because the crime does not constitute a "forcible sex offense" within the meaning of the applicable guideline. Because the district court concluded otherwise, we vacate Beltran-Munguia's sentence and remand for resentencing.

Beltran-Munguia also contends that his sentence violates his Fifth and Sixth Amendment rights because the district judge found facts about his prior conviction that allowed him to increase his sentence beyond the two-year maximum allowed under 8 U.S.C. § 1326(a). This argument is foreclosed by Supreme Court and Ninth Circuit precedents.

# I

The base offense level for a violation of § 1326 is eight. U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(a). Where the defendant was previously deported after being convicted of a felony that constitutes a "crime of violence," the offense level goes up by sixteen levels. *Id.* § 2L1.2(b)(1)(A)(ii).

The presentence report ("PSR") on Beltran-Munguia noted that he had been previously convicted for sexual abuse in the second-degree under ORS section 163.425 and recommended that the district court impose the sixteen-level enhancement on the basis of that conviction. Beltran-Munguia objected to this recommendation, arguing that his prior conviction did not constitute a "crime of violence" as defined for purposes of § 2L1.2(b)(1)(A)(ii), because the Oregon statute criminalizes nonconsensual sex and can be committed without the use of force. The district court disagreed, increased Beltran-Munguia's offense level by the recommended sixteen levels, and sentenced him to a 57-month prison term. Beltran-Munguia timely appealed.[1]

---

[1]The Sentencing Guidelines are, of course, now advisory rather than mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005). This court has twice suggested that there are circumstances in which determining the precise Guidelines sentence may be more complicated than it is worth, and so may not be required. *See United States v. Jennings*, 439 F.3d 604, 606 n.3 (9th Cir. 2006); *United States v. Cantrell*, 433 F.3d 1269, 1279 n.3 (9th Cir. 2006)*; see also United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005) (noting situations where "precise calculation of the applicable Guidelines range may not be necessary"), *abrogation on other grounds recognized by United States v. Lake*, 419 F.3d 111, 113 n.2 (2d Cir. 2005). We leave that possibility open again. Here, however, the district court did not follow that procedure but calculated a specific Guideline level and then followed it. We therefore review the Guideline determination made and followed by the district court, in accord with our post-*Booker* precedents. *See, e.g.*, *United States v. Gonzalez-Perez*, 472 F.3d 1158, 1159 (9th Cir. 2007); *United States v. Baza-Martinez*, 464 F.3d 1010, 1013 (9th Cir. 2006).

We review de novo the district court's decision that a defendant's prior conviction qualifies for a sentencing enhancement under U.S.S.G. § 2L1.2(b). *See United States v. Gonzalez-Perez*, 472 F.3d 1158, 1159 (9th Cir. 2007).

## II

For the purpose of § 2L1.2(b)(1)(A)(ii), a "crime of violence" is defined as:

> any of the following: murder, manslaughter, kidnapping, aggravated assault, *forcible sex offenses*, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or *any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another*.

U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n.1(B)(iii) (emphases added). Applying this definition, second-degree sexual abuse in Oregon constitutes a "crime of violence" only if: (1) the crime qualifies as a "forcible sex offense," a term left undefined by the guidelines; or (2) conviction of the crime requires proof of "the use, attempted use, or threatened use of physical force against the person of another."[2]

## A

We begin with the latter possibility.

**[1]** In *Taylor v. United States*, 495 U.S. 575, 600-02 (1990), the Supreme Court instructed that in determining whether a

---

[2]Because ORS section 163.425 makes no mention of the age of the victim, it is clear from the face of the statute that second-degree sexual abuse cannot be categorically classified as "sexual abuse of a minor" or "statutory rape."

prior conviction meets the requirements of a federal recidivism provision, courts should ordinarily look only to the coverage of the statute of conviction and not to the specific conduct involved in the defendant's conviction. This examination is necessarily limited to "the elements of the crimes of which the defendant was previously convicted." *United States v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990). To constitute an "element" of a crime, the particular factor in question needs to be "a 'constituent part' of the offense [that] must be proved by the prosecution *in every case* to sustain a conviction under a given statute." *United States v. Hasan*, 983 F.2d 150, 151 (9th Cir. 1992) (per curiam) (internal quotation marks omitted).

**[2]** A plain reading of ORS section 163.425 makes clear that force — used, attempted, or threatened — is decidedly not an "element" of the crime of second-degree sexual abuse in Oregon. Instead, the victim's lack of consent is the crime's defining characteristic.

Specifically, under the state statute,

> [a] person commits the crime of sexual abuse in the second degree when that person subjects another person to sexual intercourse, deviate sexual intercourse, or . . . penetration of the vagina, anus or penis with any object other than the penis or mouth of the actor and *the victim does not consent thereto*.

OR. REV. STAT. § 163.425(1) (emphasis added). Thus, the government bears no burden of proving force extrinsic to the act of penetration. By comparison, when prosecuting a defendant for either rape in the first degree or sexual abuse in the first degree under ORS sections 163.375(1)(a) and 163.427(1)(a)(B), respectively, the state bears the burden of proving that the victim was "subjected to *forcible compulsion*." *Id.* §§ 163.375(1)(a), 163.427(1)(a)(B) (emphasis added).

That the same "forcible compulsion" requirement does not apply to second-degree sexual abuse is evident not only from the language of ORS section 163.425 but also from its legislative history. That history makes clear that ORS section 163.425 was enacted to fill a specific "omission" in the Oregon criminal code — namely, the failure to make criminal "subject[ing] another to sexual intercourse without the victim's consent — but not by forcible compulsion." *See State v. Stamper*, 106 P.3d 172, 177-78 (Or. Ct. App.) (discussing a 1983 amendment to Oregon's second degree sexual abuse statute), *review denied*, 119 P.3d 790 (Or. 2005).[3]

That force, actual or inchoate, is not a required element of ORS section 163.425 is further corroborated by the Oregon appellate decisions that have interpreted the statute. Those decisions make clear that a defendant can be convicted of second-degree sexual abuse where the victim professed consent but was legally incapable of giving it. *See id.* at 179; *State v. Mezick*, 820 P.2d 849, 850 (Or. Ct. App. 1991); *State v. Landino*, 590 P.2d 737, 739 (Or. Ct. App. 1979).

ORS section 163.315 delineates four types of legal incapacity that apply to all sexual offenses listed in the Oregon criminal code, including second-degree sexual abuse. *See* OR. REV. STAT. § 163.315; *Landino*, 590 P.2d at 739 ("That all four types of legal incapacity set out in ORS 163.315 were intended to apply to all sexual offenses is clear."):[4] Under ORS section 163.315(1):

---

[3]The original second-degree sexual abuse statute was adopted in 1971, but treated the offense as only a Class A misdemeanor. *See* OR. REV. STAT. § 163.415 (1971). In 1983, the statute was codified as section 163.425 and reclassified as a Class C felony. We note that Oregon now also criminalizes this exact "omission" as rape in the first degree. *See* OR. REV. STAT. § 163.375(1)(d).

[4]*Landino* interpreted an earlier version of Oregon's second-degree sexual abuse statute, codified as ORS section 163.415, which defined the offense, in relevant part, as follows:

> A person is considered incapable of consenting to a sexual act if the person is:
>
> > (a)   Under 18 years of age;
> >
> > (b)   Mentally defective;
> >
> > (c)   Mentally incapacitated; or
> >
> > (d)   Physically helpless.

OR. REV. STAT. § 163.315(1). ORS section 163.305, in turn, defines the terms "mentally defective," "mentally incapacitated," and "physically helpless." *Id.* § 163.305(3)-(5). To be "mentally defective," for example, "means that a person suffers from a mental disease or defect that renders [her] incapable of appraising the nature of the conduct of the person." *Id.* § 163.305(3). To be "mentally incapacitated," the victim must have been

> rendered incapable of appraising or controlling the conduct of the person at the time of the alleged

---

A person commits the crime of sexual abuse in the second degree if he subjects another person to sexual contact; and

> (a)   The victim does not consent to the sexual contact; or
>
> (b)   The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless.

OR. REV. STAT. § 163.415(1) (1971). The current version of Oregon's second-degree sexual abuse statute, codified as ORS section 163.425, contains a more specific definition of the type of "sexual contact" at issue and has also replaced subparts (a) and (b) with the general language "the victim does not consent thereto." Despite this change, *Landino* remains good law, and the new language regarding consent still encompasses the four categories of legal incapacity listed in section 163.315. *See Stamper*, 106 P.3d at 176.

offense because of the influence of a controlled or other intoxicating substance administered to the person without the consent of the person or because of any other act committed upon the person without [her] consent.

*Id.* § 163.305(4). Finally, to be "physically helpless," the victim must have been "unconscious or for any other reason [was] physically unable to communicate unwillingness to an act." *Id.* § 163.305(5).

Given the applicability of ORS section 163.315 to ORS section 163.425, a perpetrator could commit second-degree sexual abuse by surreptitiously adding to his victim's drink a drug that affects one's judgment, thereby rendering her "mentally incapacitated." She would then be legally incapable of consent even if she participated fully in the sex act. Similarly, the victim could be "mentally defective," yet fully physically cooperative. Under both those circumstances, a perpetrator would not necessarily have to use, attempt to use, or threaten to use any force above and beyond the force inherent in the act of penetration, *see infra* pp. 6885, to commit second-degree sexual abuse. In other words, under such circumstances, a perpetrator would not have categorically committed a "crime of violence," as the term is defined for purposes of § 2L1.2(b)(1)(A)(ii).

**[3]** To be sure, a victim of second-degree sexual abuse could, in reality, have been subjected to force during the commission of the crime. In defining the term "without [her] consent," the Oregon state legislature included not only victims "considered to be incapable of consenting as a matter of law," but also victims who were "forcibly compelled to submit" and victims who did "not acquiesce in the actor's conduct." *Stamper*, 106 P.3d at 176 (citing to the Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 105, 106 (July 1971)). But the possibility that extrinsic force was used in some fashion

in the commission of the crime does not make it an essential "element" of second-degree sexual abuse. Put another way, even if a defendant did use force to commit his offense, the prosecution bore no burden to prove that fact, as the government could establish lack of consent in some other fashion. Absent such a burden, this portion of § 2L1.2(b)(1)(A)(ii)'s "crime of violence" definition does not categorically apply.

**B**

**[4]** The government argues otherwise, and in so doing, claims support in this circuit's case law. We do not agree that our precedents support the proposition that § 2L1.2(b)(1)(A)(ii) applies where it is possible that force will be used to accomplish the sex crime but the prosecution need not prove that it was.

*United States v. Yanez-Saucedo*, 295 F.3d 991 (9th Cir. 2002), for example, involved a markedly different question than the one presented here. There, the court was charged with determining whether third-degree rape, as defined under Washington law, constituted an "aggravated felony" under § 2L1.2. *Id.* at 992. Like the Oregon statute at issue here, the Washington statute in *Yanez-Saucedo* criminalizes nonconsensual sex.[5] *Id.* at 992, 995. Unlike the "crime of violence" definition used for purposes of § 2L1.2(b)(1)(A)(ii), however, an aggravated felony, under the same guideline, is defined as including "rape," in general. *Id.* at 993-94. In holding that third-degree rape constituted an aggravated felony, *Yanez-Saucedo* concluded only that that particular crime "fit[ ] within a generic, contemporary definition of rape, which can,

---

[5]Under Washington Revised Code section 9A.44.060(1), a person is guilty of third-degree rape if he engaged in sexual intercourse: "(a) [w]here the victim did not consent . . . and such lack of consent was clearly expressed by the victim's words or conduct, or (b) [w]here there is threat of substantial unlawful harm to property rights of the victim." WASH. REV. CODE § 9A.44.060(1).

*but does not necessarily*, include an element of physical force beyond that required for penetration." *Id.* at 996 (emphasis added). In other words, far from indicating that nonconsensual sex necessarily involves the use or threatened use of force as an element of the crime, *Yanez-Saucedo* held only that "rape" — which is an "aggravated felony," but not a per se "crime of violence" — need not include any such element.

[5] As the careful wording of *Yanez-Saucedo* indicates, this circuit has never held that a sex crime can be considered to require the "use of force," as an element of the crime, simply because it involves the act of penetration. While we have never expressly ruled out that possibility, the majority of other circuits have. *See United States v. Sarmiento-Funes*, 374 F.3d 336, 340 (5th Cir. 2004) (rejecting that "the act of penetration itself is enough to supply the force required under § 2L1.2"); *United States v. Meader*, 118 F.3d 876, 881-82 (1st Cir. 1997) (concluding that a statutory rape offense did not involve the "use of force," within the meaning of U.S.S.G. § 4B1.2, even though penetration was involved in the crime); *United States v. Shannon*, 110 F.3d 382, 384-85 (7th Cir. 1997) (en banc) (same); *but see United States v. Ivory*, 475 F.3d 1232, 1236 (11th Cir. 2007) (concluding that a state offense was a categorical match for § 4B1.2(a)(1) because the "nonconsensual act of sexual penetration by its nature involves at least some level of physical force and pressure directed against another person's body"). While the Eleventh Circuit's approach may have common sense appeal, it does not satisfy the statutory requirement that an "element" of the crime involve "the use, attempted use, or threatened use of physical force against the person of another." *See Hasan*, 983 F.2d at 151 (explaining that an "element" must be a "*constituent* part of the offense" (internal quotations omitted) (emphasis added)).[6]

---

[6]In addition, the Eleventh Circuit case law that underlies *Ivory* has evolved differently than similar case law in our circuit. *Compare Ivory*, 475 F.3d at 1235 (explaining that, under Eleventh Circuit precedent, the crime of "simple battery" has "as an element, the use or attempted use of

Like in *Yanez-Saucedo*, in *Castro-Baez v. Reno*, 217 F.3d 1057 (9th Cir. 2000), it was also unnecessary to find force as a requisite element of the prior conviction. There, we were asked to decide whether a defendant's prior rape conviction under California Penal Code section 261(a)(3) qualified as an "aggravated felony" within the meaning of § 101(a)(43)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(A). *Id.* at 1058. California defines "rape" for purposes of section 261(a)(3) as including "an act of sexual intercourse" accomplished "[w]here a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused." *Id.* at 1059 (alteration in original) (quoting Cal. Penal Code § 261(a)(3)) (internal quotation marks omitted). We explained in *Castro-Baez* that "[i]n ordinary usage, *rape* is understood to include the act of engaging in non-consensual sexual intercourse with a person whose ability to resist has been substantially impaired by drugs or other intoxicants." *Id.*; *see also id.* (citing the Black's Law Dictionary definition of rape as an "act of sexual intercourse committed by a man with a woman not his wife and without her consent, committed when the woman's resistance is overcome by force *or* fear, *or* under other prohibitive conditions" (emphases added)). A prior conviction for rape under California Penal Code section 261(a)(3)

---

physical force" because it involves "physical contact of an insulting or provoking nature"), *with Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1017-18 (9th Cir. 2006) (explaining that "[w]e have held that conduct involving mere offensive touching does not rise to the level of a 'crime of violence,' " and that, as a result, a prior conviction for battery cannot be considered a crime of violence, within the meaning of 18 U.S.C. § 16), *and id.* at 1016-18 (citing a series of Ninth Circuit cases for the proposition that battery, as criminalized under various state statutes, cannot be a categorical "crime of violence"), *and id.* at 1016 (explaining that "we have 'squarely held that the force necessary to be a crime of violence [under 18 U.S.C. § 16(a)] must actually be violent in nature' " (citing *Singh v. Gonzales*, 386 F.3d 1228, 1233 (9th Cir. 2004) (internal quotation marks omitted))).

therefore qualified as "rape" and thus as an "aggravated felony" under the immigration statute. *Id.* Like *Yanez-Saucedo*, then, *Castro-Baez* held only that a sexual offense that covers nonconsensual sexual intercourse can be "rape" for purposes of federal provisions using that term.

*United States v. Cortez-Arias*, 403 F.3d 1111 (9th Cir. 2005), is also inapplicable here, albeit for a different reason. *Cortez-Arias* held that the "threatened use of physical force against the person of another" portion of U.S.S.G. § 2L1.2(b)(1)(A)(ii)'s "crime of violence" definition inherently encompasses "acts that communicate to another person an intent to use physical force against that person and acts suggesting that physical force against that person may be impending." *Id.* at 1116. The Oregon second-degree sexual abuse statute does not establish as a required element such communicative or suggestive acts. *See also United States v. Anderson*, 989 F.2d 310, 311 (9th Cir. 1993) (holding that where a " 'violent felony' includes any crime that 'has as an element the use, attempted use, or threatened use of physical force against the person of another,' " "[a] threat of force against a person is an element of a crime only if the crime *must* involve a threat of force" (emphasis omitted) (quoting 18 U.S.C. § 924(e)(2)(B)(i))).

Finally, *United States v. Riley,* 183 F.3d 1155 (9th Cir. 1999), does not support the government's submission either. *Riley* concerned a prior conviction under Louisiana's "simple rape" statute — a statute that, much like ORS section 163.425, criminalizes nonconsensual, but not necessarily forceful, sexual intercourse. *See id.* at 1157 n.2 (quoting LA. REV. STAT. ANN. § 14:43 (1998)). *Riley*, however, involved a separate Sentencing Guideline from the one at issue here — namely, § 4B1.2, which defines "crime of violence" in materially different terms than § 2L1.2.

Under § 4B1.2(a), a "crime of violence" is a federal or state felony that:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, *or*

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a) (emphases added). Although the first part of this definition mirrors some of the language used in the commentary to § 2L1.2(b)(1)(A)(ii), the second part of the definition — in particular, the words "otherwise involves conduct that presents a serious potential risk of physical injury to another" — are unique to § 4B1.2. It was those words that *Riley* relied upon when it held that "simple rape" constituted a crime of violence, emphasizing the potential risk of violence inherent in all sexual crimes. *See* 183 F.3d at 1157-58.

Because § 4B1.2 contains the "serious potential risk of physical injury" catchall provision not applicable to § 2L1.2(b)(1)(A), *Riley* does not control our outcome. *Cortez-Arias* dictates this conclusion, as it declined to transfer to the § 2L1.2(b)(1)(A) context a holding premised on the "serious risk" language in § 4B1.2(a):

> Cortez-Arias received a sentencing enhancement under USSG § 2L1.2. The commentary to that section defines a "crime of violence" somewhat differently than does § 4B1.2(a) . . . . Neither [§ 2L1.2] nor its commentary in explicit words refer to crimes that "involve conduct that presents a serious risk of physical injury to another."

> Accordingly, we conclude that . . . [a case] holding that California Penal Code section 246 is a "crime of violence" [for purposes of § 4B1.2] because it

> involves conduct that presents a serious risk of phys-
> ical injury to another does not necessarily resolve the
> question of whether the same offense is a "crime of
> violence" for purposes of USSG § 2L1.2.

403 F.3d at 1114 (citing *United States v. Weinert*, 1 F.3d 889
(9th Cir. 1993) (per curiam)); *see also United States v. Pax-
ton*, 422 F.3d 1203, 1206 (10th Cir. 2005) (explaining that, as
a result of the difference between §§ 4B1.2 and 2L1.2, an
offense that is not a crime of violence under § 2L1.2 because
it "lack[s] the use of physical force as an element" can none-
theless be a crime of violence under § 4B1.2 "because of an
inherent risk of physical injury"), *cert. denied*, 126 S. Ct.
1403 (2006); *United States v. Jaimes-Jaimes*, 406 F.3d 845,
849-50 (7th Cir. 2005) (explaining that " 'crime of violence'
is defined more narrowly in § 2L1.2 than in other contexts
because the definition does not encompass acts . . . that
merely pose a risk of harm to another person").

**[6]** There are cases in our circuit containing language
which, taken out of context, can be read to suggest that the
phrase "crime of violence" must be interpreted to carry the
same meaning throughout the guidelines, even when the
defining language in particular guidelines differs. *See, e.g.*,
*United States v. Pereira-Salmeron*, 337 F.3d 1148, 1153 (9th
Cir. 2003) (writing that "there is no indication that the term
['crime of violence'] is intended to mean something different
for [one] provision than it does elsewhere"); *United States v.
Granbois*, 376 F.3d 993, 996 (9th Cir. 2004) (same). *Pereira-
Salmeron* and *Granbois*, however, do not equate § 4B1.2's
"serious potential risk of physical injury" prong with
§ 2L1.2's "force as an element of the crime" prong, but
instead equate only the per se crimes of violence aspects of
the two definitions. *See Pereira-Salmeron*, 337 F.3d at 1154
(noting, after discussing in dicta the results reached under the
catchall provision of another guideline, that "[t]he specific
issue before us is whether Pereira-Salmeron's conviction . . .
falls within the category of 'sexual abuse of a minor,' " a per

se category); *Granbois*, 376 F.3d at 995 (noting that *Pereira-Salmeron* "explained that crimes involving the sexual abuse of a minor are *per se* 'crimes of violence,' " and following that holding while declining to consider the application of the "serious risk of physical injury" catchall provision in § 4B1.2); *United States v. Asberry*, 394 F.3d 712, 716 (9th Cir. 2005) (stating that "[i]n *Granbois*, we held *in the context of interpreting 'sexual abuse of a minor'* that 'there is no indication that ["crime of violence"] is intended to mean something different' in section 4B1.2 than it does in section 2L1.2" (second alteration in original) (emphasis added) (quoting *Granbois*, 376 F.3d at 996)). Because these cases did not concern the application of § 4B1.2's catchall "serious risk" language to § 2L1.2, the controlling precedent for purposes of this case is *Cortez-Arias*, which does concern precisely that issue.

We note that the holding of *Cortez-Arias* is supported by the fact that § 4B1.2(a) defines "crime of violence" under that section as encompassing, in addition to the list of per se crimes of violence, *both* offenses that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another," *and* offenses that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another," while the definition applicable to § 2L1.2(b)(1)(A)(ii) contains only the former phrase. *Compare* U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a), *with id.* § 2L1.2 cmt. n.1(B)(iii). To equate the two sections even though one has a phrase of some length entirely absent from the other would violate established principles of construction proscribing interpretations that assume mere surplusage. *See, e.g.*, *United States v. Stevens*, 462 F.3d 1169, 1171 (9th Cir. 2006); *United States v. Wenner*, 351 F.3d 969, 975 (9th Cir. 2003). Instead, it is evident that the catchall language of § 4B1.2 is broader than the catchall provision language applicable to § 2L1.2.

Nor does *Riley*'s reliance on the words "serious potential risk of physical injury to another" mean that second-degree

sexual abuse in Oregon necessarily involves the "threatened use of physical force." In explicating what it meant by "risk," *Riley* reasoned that the act of rape, whether overtly forceful or "merely" nonconsensual, always "creates an atmosphere that fosters the *potential* for physical confrontation." 183 F.3d at 1159 (emphasis added) (explaining how, in cases involving simple rape, "if the victim realize[s] at any point that the perpetrator [is] not her husband or if the victim [comes] out of her stupor, the situation could easily escalate into a violent confrontation"). But the "*threatened* use" of physical force is not the same as the "*potential* use" of physical force. "Threatened use" for purposes of § 2L1.2(b)(1)(A)(ii) must be an element of the crime, and denotes a specific communication, explicit or implicit, by the defendant — a threat — not a risk that may occur as a *result* of the action that constitutes the offense.

\* \* \* \*

**[7]** In short, because ORS section 163.425 of the Oregon Revised Statutes does not make "the use, attempted use, or threatened use of physical force" an element of the crime of second-degree sexual abuse, Beltran-Munguia's prior conviction does not qualify as a "crime of violence" under this prong of our § 2L1.2(b)(1)(A)(ii) analysis.

## C

**[8]** Beltran-Munguia's prior conviction does not qualify as a "crime of violence" under § 2L1.2(b)(1)(A)(ii)'s "forcible sex offenses" alternative either. Not surprisingly, given its language, we have interpreted the phrase "forcible sex offenses" as requiring the use of force, an interpretation that precludes application to the Oregon crime here at issue.

**[9]** *United States v. Lopez-Montanez*, 421 F.3d 926 (9th Cir. 2005), concerned whether a conviction under California's sexual battery statute, California Penal Code section 243.4(a),

qualifies as a conviction for a "forcible sex offense" and therefore as a conviction for a "crime of violence" under § 2L1.2. We held that it does not, because "under the California sexual battery statute, the touching may be 'ephemeral,' or committed without the use of force." *Id.* at 929.[7] In so holding, we relied on several other Ninth Circuit cases that require some degree of force to label a crime "violent." *See id.* (citing *Ye v. INS*, 214 F.3d 1128 (9th Cir. 2000), for the proposition that "the force necessary to constitute a crime of violence [ ] must actually be violent in nature," and *Singh v. Ashcroft*, 386 F.3d 1228 (9th Cir. 2004), as declining to make a conviction under an Oregon harassment statute a categorical crime of violence "because it did not involve the requisite use of force" (alteration in original) (quoting *Ye*, 214 F.3d at 1133) (internal quotation marks omitted)). While it recognized that other cases in our circuit, like *Pereira-Salmeron* and *Granbois*, had held that "sexual abuse of a minor" is a "crime of violence" under § 2L1.2, *Lopez-Montanez* distinguished those cases by concluding that "[n]either our case law nor the statute . . . supports the proposition that the commission of a 'forcible sex offense[ ]' against an individual who is *not a minor* constitutes a crime of violence if the statute of conviction does not require the use of force." *Id.* at 930 (alteration in original). It thus "reject[ed] the government's invitation to read out 'forcible' from 'forcible sex offenses.' " *Id.*[8]

---

[7]Under the California statute:

> Any person who *touches* an intimate part of another person while that person is *unlawfully restrained* by the accused or an accomplice, and if the touching is *against the will of the person touched* and is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery.

CAL. PENAL CODE § 243.4(a) (emphasis added).

[8]The Third Circuit has concluded otherwise, holding that a "forcible sex offense" does not require some "application of direct physical force." *See United States v. Remoi*, 404 F.3d 789, 794 (3d Cir.) (per curiam), *cert. denied* 126 S. Ct. 467 (2005). We are, however, bound by *Lopez-Montanez*. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that "a three-judge panel may not overrule a prior decision of the court" unless the "prior decision . . . [has] been undercut by higher authority to such an extent that it has been effectively overruled").

## D

[10] Although we have already determined that sexual abuse in the second degree does not categorically require the use of force, under the modified categorical approach we separately consider whether any judicially noticeable facts show that Beltran-Munguia was in fact convicted of committing second-degree sexual abuse through the use of force. *See United States v. Rivera-Sanchez*, 247 F.3d 905, 908 (9th Cir. 2001) (en banc); *Lopez-Montanez*, 421 F.3d at 931-32.[9] Doing so, we conclude that none of the additional documents examined by the sentencing judge — the charging document, the judgment, the plea agreement, a court order for HIV testing, and the notice of sex offender registration — establish that Beltran-Munguia was convicted of a crime involving the use of force.

[11] As a result, Beltran-Munguia's conviction of second-degree sexual abuse under Oregon law does not amount to a "crime of violence" under the modified categorical approach.

## III

Beltran-Munguia next argues that the district judge violated his Fifth and Sixth Amendment rights by finding that his deportation occurred "subsequent to" a prior conviction. We reject this argument.[10]

---

[9]We do not decide whether the modified categorical approach can be used to decide if a prior conviction constitutes a "crime of violence" under the provision that defines § 2L1.2(b)(1)(A)(ii) to include "any offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." We have previously assumed both that this approach does apply and that it does not. *Compare United States v. Martinez-Martinez*, 468 F.3d 604, 613-14 (9th Cir. 2006), *with United States v. Piccolo*, 441 F.3d 1084, 1086-86, 1088 n.7 (9th Cir. 2006). Given that none of the available documents here make any mention of force, we need not resolve this question today.

[10]Although we vacate Beltran-Munguia's current sentence, we reach this claim because it is likely to be raised again if we do not. On remand,

**[12]** Under recent Supreme Court and Ninth Circuit juris-prudence, *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), holding that the fact of a prior conviction need not be proven to a jury beyond a reasonable doubt, remains good law. So a judge may find the fact of a prior conviction — including facts about that conviction apparent from the face of the cognizable documents — to enhance a sentence. *See Booker*, 543 U.S. at 244; *Apprendi v. New Jersey*, 530 U.S. 466, 489-90 (2000); *United States v. Quintana-Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004) (order); *see also United States v. Beng-Salazar*, 452 F.3d 1088, 1091 (9th Cir. 2006) (holding that nothing in two post-*Apprendi* Supreme Court cases, *Shepard v. United States*, 544 U.S. 13 (2005), and *Dretke v. Haley*, 541 U.S. 386 (2004), overrules *Almendarez-Torres*).

**[13]** We have held, in contrast, that district courts do com-mit *Apprendi* error by finding on its own *both* the fact of prior removal and the fact of prior conviction. *See United States v. Zepeda-Martinez*, 470 F.3d 909, 912-13 (9th Cir. 2006); *United States v. Covian-Sandoval*, 462 F.3d 1090, 1097-98 (9th Cir. 2006), *cert. denied* ___ S. Ct. ___ (2007). But in this case, Beltran-Munguia admitted when pleading guilty that he was removed from the United States "on or about April 8, 2005." And the date of his prior conviction under ORS sec-tion 163.425 — April 25, 2000 — was readily apparent from several of the judicially noticeable documents available to the district court. The district court could, therefore, readily con-clude that Beltran-Munguia was removed "subsequent to" his prior conviction, without making any factual findings not apparent from the face of the conviction documents. *Almendarez-Torres* is therefore binding on us in this case.

---

the district court will have to recalculate the appropriate guidelines level. *See Cantrell*, 433 F.3d at 1280. In doing so, the question of reliance on the sexual abuse in the second degree conviction will arise again, because § 2L1.2(b)(1)(C) allows for an eight-level increase where a prior convic-tion constitutes an "aggravated felony." U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(C).

## IV

**[14]** In conclusion, the sentencing judge erred when he enhanced Beltran-Munguia's sentence sixteen levels, under § 2L1.2(b)(1)(A)'s "crime of violence" provision. As a result, we vacate Beltran-Munguia's sentence and remand for resentencing.

**VACATED AND REMANDED.**

---

RYMER, Circuit Judge, with whom Circuit Judge Tallman joins, concurring:

If we were writing on a clean slate, I would hold that non-consensual penetration falls within the plain meaning of "physical force." *See United States v. Ivory*, 475 F.3d 1232 (11th Cir. 2007).

---

TALLMAN, Circuit Judge, with whom Circuit Judge Rymer joins, concurring:

I am bound by precedent to concur. I write separately, however, because of the injustice resulting from our precedents. In our zeal to be good legal technicians, we are abandoning the role of common sense in fashioning appropriate punishment for repeat offenders like Beltran-Munguia. Our current case law yields a result that minimizes a crime effected by exploiting a victim's helplessness. For purposes of a "crime of violence" enhancement, I have conceptual difficulties characterizing the "force" of physical penetration imposed on an unwilling victim as different in kind from the physical force imposed to overcome the victim's unwillingness. From the victim's perspective, both acts are "violent" and surely nonconsensual. Nevertheless, I cannot say that the Oregon

offense requires the prosecution to prove the use, attempted use, or threatened use of physical force to sustain a conviction. *See United States v. Hasan*, 983 F.2d 150, 151 (9th Cir. 1992).

Were I writing on a clean slate, I would hold that the Oregon conviction categorically qualifies as a "crime of violence" because it is a specifically enumerated offense—namely, a "forcible sex offense." In my view, a sex offense committed against an unconscious victim is as much a "crime of violence" as a sex offense involving physical force committed against a conscious victim. In both circumstances, the perpetrator commits an act against the victim's will. The law presumes that were the victim competent and capable of giving consent, she would not, and that she would resist the assault as best she could.

Neither the Sentencing Guidelines nor their commentary define "forcible sex offenses." Were I not confined by *United States v. Lopez-Montanez*, 421 F.3d 926 (9th Cir. 2005), I would interpret the undefined term—"forcible sex offenses" —to encompass nonconsensual sex crimes. In "ordinary, contemporary, and common parlance," *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145 (9th Cir. 2001), "forcible" denotes an act against a person's will. "Forcible" should encompass all acts undertaken against the victim's will, regardless of whether the perpetrator inflicts the assault by physical force, threatens physical force, or cripples the victim's ability to consent.

The Guidelines' language and the Commission's intent compel this interpretation. "Forcible sex offenses," like other listed offenses—e.g., statutory rape, sexual abuse of a minor, extortionate extension of credit, and burglary of a dwelling— automatically qualify as "crimes of violence," regardless of whether force is an essential element. *See United States v. Pereira-Salmeron*, 337 F.3d 1148, 1152 (9th Cir. 2003). The Commission amended the Guidelines' commentary in

November 2003 to clarify that enumerated offenses need not involve the actual use, attempted use, or threatened use of physical force. *See United States v. Asberry*, 394 F.3d 712, 716 (9th Cir. 2005) (tracking evolving language of section 2L1.2 (citing U.S. Sentencing Commission, Guidelines Manual app. C, amend. 658, Reason for Amend., 397-402 (2003)).

The Sentencing Commission selected certain offenses that deserve treatment as crimes of violence per se, probably because the selected crimes inherently pose an implicit "threatened use of force." *Pereira-Salmeron*, 337 F.3d at 1152. Furthermore, the Guidelines' language "indicates the Commission's intent to cover crimes that involve an implicit use of force or a substantial potential for violence." *Id.* at 1153. Nonconsensual sex offenses fall within this category of crimes. *See United States v. Yanez-Saucedo*, 295 F.3d 991, 995-96 (9th Cir. 2002) (rejecting the notion that rape absent a forcible compulsion element lacks any degree of force); *United States v. Riley*, 183 F.3d 1155, 1159 (9th Cir. 1999) (likening simple rape—intercourse without the victim's lawful consent—to crimes previously deemed inherently violent)*; United States v. Ivory*, 475 F.3d 1232, 1236 (11th Cir. 2007) (recognizing that nonconsensual penetration "involves at least some level of physical force and pressure directed against another person's body"); *State v. Bashaw*, 672 P.2d 48, 49 (Or. 1983) (considering rape a crime of "degradation as well as violence").

In addition to the Guidelines' language and the Commission's intent, a fundamental rule of statutory construction supports interpreting "forcible sex offenses" to encompass all sex acts taken against a victim's will. Specifically, courts should not interpret one provision in a way that renders another part of the same statute superfluous. *United States v. Fish*, 368 F.3d 1200, 1205 (9th Cir. 2004). Along these lines, " 'no definition should be completely subsumed within another.' " *United States v. Stevens*, 462 F.3d 1169, 1171 (9th Cir. 2006) (quoting *United States v. Lopez-Solis*, 447 F.3d 1201, 1205

n.10 (9th Cir. 2006)). By defining "forcible sex offenses" to encompass only a narrower group of offenses, i.e., those offenses with a "forcible compulsion" element, the "has as an element" definition in section 2L1.2(b)(1)(A)(ii) subsumes "forcible sex offenses," and renders the phrase meaningless. For this reason, we would be better advised to interpret the term as did the Third Circuit in *United States v. Remoi*, 404 F.3d 789 (3d Cir. 2005).

In *Remoi*, the court concluded that a defendant's prior New Jersey conviction for penetration against a physically helpless, mentally defective, or mentally incapacitated victim constituted a "forcible sex offense," and thus a "crime of violence." *Id.* at 794. The court explained that the Commission "did not mean to limit 'forcible sex offenses' to those involving the application of direct physical force, as opposed to some other type of compulsion," where doing so renders the provision superfluous. *Id.* at 794-95. The court further noted that the Commission considers sex crimes against minors per se "forcible sex offenses" because a minor lacks the capacity to consent to sexual relations, which makes the relations "forcible." *Id.* at 795.[1] Because the logic applies equally to other types of

---

[1] In 2001, the Commission amended section 2L1.2 by defining "crime of violence" with the parenthetical "(including sexual abuse of a child)" after "forcible sex offenses." *Asberry*, 394 F.3d at 716. In 2003, the Commission further amended the definition of "crime of violence" to list "sexual abuse of a minor" separately. *Id.* The 2002 version applied in *Remoi*. Though the 2004 edition of the Guidelines applies in this case, the reasoning in *Remoi* is persuasive. That the Commission once cited "sexual abuse of a minor" as an example of a "forcible sex offense" supports extending the term to all sex acts taken against a victim's will, not just those involving forcible compulsion. The Commission revised the definition in 2003 to list "sexual abuse of a minor" only because the previous definition led to confusion about whether the specified offenses, particularly sexual abuse of a minor, had to include as an element "the use, attempted use, or threatened use of physical force against the person of another." *Asberry*, 394 F.3d at 716 (citing U.S. Sentencing Guidelines Manual app. C, amend. 658, Reason for Amendment, 397-402 (2003)). Had the Commission intended that "forcible sex offenses" involve physical force or a threat of force, it could have said so at the same time.

vulnerable victims, the Third Circuit had no trouble concluding that penetration against a "physically helpless, mentally defective or mentally incapacitated" victim constituted a "forcible sex offense." *Remoi*, 404 F.3d at 795. Finally, the court recognized the Sentencing Commission's November 2003 Amendment as clarifying that an enumerated offense always qualifies as a "crime of violence," regardless of whether the perpetrator employed physical force. *Id.*; *see also United States v. Luciano-Rodriguez*, 442 F.3d 320, 329 (5th Cir. 2006) (Owen, J., dissenting) (concluding that sexual intercourse without legally effective consent falls within the scope of "forcible sex offenses" based on the history behind the definition).

We may find under this post-*Booker/Fanfan* advisory Guidelines regime that district judges can nonetheless dispense justice in fashioning an appropriate sentence for recidivist offenders like Beltran-Munguia. If so, then the mental gymnastics of the panel's opinion here, though an interesting academic discussion, does no real harm to sentencing discretion. Nevertheless, there is confusion in our case law, and I urge our court to revisit any precedent that precludes us from classifying nonconsensual sex as a "crime of violence" under section 2L1.2(b)(1)(A)(ii). We should join the Third Circuit and define "forcible sex offenses" to include any sexual act committed against the victim's will or consent. *See Remoi*, 404 F.3d at 796. Because Judge Berzon correctly applies existing circuit precedent here, I reluctantly concur.